SECURITY NATIONAL BANK, Respondent, v. COHEN, Appellant: CLINTONVILLE SAVINGS & LOAN ASSOCIATION, Defendant.

*No. 174.  Argued February 6, 1969.—Decided March 4, 1969.*
(Also reported in 165 N. W. 2d 140.)

712

For the appellant there was a brief by *Glassner, Clancy & Glassner* of Milwaukee, attorneys, and *Richard E. Johnson* of Waupaca of counsel, and oral argument by *William E. Glassner, Jr.,* and *Albert Solochek,* both of Milwaukee.

For the respondent there was a brief and oral argument by *Karl J. Goethel* of Durand.

WILKIE, J.   Three interrelated issues are presented on this appeal:

1. Did plaintiff-respondent prove the underlying obligation for which the mortgage was security?

2. Was the mortgage executory in that it was conditioned upon the return of the hypothecated life insurance policies?

3. In the absence of a showing of fraud, is the defendant entitled to defend the foreclosure of the mortgage, under seal, on grounds of want of consideration?

Appellant's major contentions are (1) that the plaintiff-respondent has failed to establish an obligor-obligee relationship between C & S Cohen, Inc., and the Security National Bank; and (2) that on May 22, 1958, it was agreed that Carl Cohen would substitute a mortgage on certain property in the name of a corporation (C & S Cohen, Inc.) as collateral to replace the insurance policies held by the bank. Appellant contends that the mortgage never became effective because the insurance policies were not returned from the bank.

### Underlying Obligation.

Did plaintiff-respondent prove the underlying obligation for which the mortgage was security?

Appellant properly contends that there can be no mortgage unless there is a debt to be secured thereby.[1] It is conceded that there is no note representing the debt.

At the outset it should be pointed out that the obligation for which the mortgage in question was security was the debt of Chain-O-Lakes to the bank. We are not dealing with an obligation of C & S Cohen, Inc., to the bank. The relationship of the bank and C & S Cohen, Inc., was that of principal and surety,[2] C & S Cohen,

[1] *Estate of Rosenthal* (1967), 34 Wis. 2d 402, 149 N. W. 2d 585; *Doyon & Rayne Lumber Co. v. Nichols* (1928), 196 Wis. 387, 220 N. W. 181; *Cawley v. Kelley* (1884), 60 Wis. 315, 19 N. W. 65.

[2] *See* 72 C. J. S., *Principal and Surety,* p. 514, sec. 1.

Inc., securing the obligation running from Chain-O-Lakes to the bank.

As to the nature of that obligation, it appears that Irving Koren and the corporation of which he was president, Chain-O-Lakes, Inc., were indebted to the bank in the sum of approximately $33,000 as of May 22, 1958. Of this amount the bank recovered $10,000 from Fidelity & Casualty Company, which company is subrogated for that amount.

A conference was held on May 22, 1958, to settle this indebtedness. The results of this conference, as embodied in the letter of Harold E. Stafford, were that the bank would settle the debt for the sum of $13,000, Irving Koren paying $2,000 down and $1,000 per year, payable quarterly, with interest at five percent per annum. The letter further indicated that Carl Cohen agreed that this obligation was to be secured by a second mortgage on certain properties which were owned by him in the name of a corporation (C & S Cohen, Inc.).

Schiefelbein, who attended the May, 1958, conference, confirmed the agreement as set forth in the Stafford letter. He testified that as of that date the amount owed by Chain-O-Lakes to the bank was approximately $33,000. He also testified that the settlement agreement provided that Irving Koren pay Security National Bank the sum of $13,000. He stated that $2,000 was paid down by Koren and that the balance was to be paid in quarterly installments. Schiefelbein was permitted to testify that the agreement to pay the additional $11,000 was to have been secured by a second mortgage on the property located in Waupaca county owned by C & S Cohen, Inc. According to Schiefelbein, the bank never received any payments upon the $11,000.

In his testimony, Koren acknowledged the debt as described in the letter of June 25, 1958, although he did not testify specifically as to its amount.

Carl Cohen acted upon his part of the agreement. LeRoy J. Hagemann, attorney for Carl Cohen, testified

that in the first part of October, 1958, Carl Cohen came to his office with a prepared letter and a mortgage which he wanted him (Hagemann) to execute. Cohen further requested Hagemann to tender the mortgage with the letter to the attorney for the bank, Stafford. The letter stated:

"Enclosed you will find a second mortgage executed by C & S Cohen Inc. Mr. Cohen advised me that certain insurance policies are presently being held by Security National and requests there [sic] retender at this time."

The mortgage reads, in part, as follows:

"This mortgage is given as a second mortgage on the above described property in the course of a release and settlement. Provided alswys [sic], that the mortgagor shall pay the mortgagee the sum of $11,000.00 said sum to be paid in quarterly installments of $250.00 with interest at the rate of 5% per annum on the unpaid balance, and the first quarterly payment shall be due on May 22, 1958."

Thus it appears that Koren owed the Security National Bank the sum of $11,000 plus interest, and that the mortgage executed by Carl and Sylvia Cohen, as officers of C & S Cohen, Inc., was for the purpose of securing that obligation.

The trial court correctly concluded that the indebtedness was fully described in the mortgage and, therefore, it was not material that a separate note had not been executed.[3]

### Is Mortgage Executory?

Was the mortgage executory in that it was conditioned upon the return of the hypothecated life insurance policies?

[3] 59 C. J. S., *Mortgages*, p. 158, sec. 112d. *See Wood v. Travis* (1931), 231 App. Div. 331, 248 N. Y. Supp. 22; 41 C. J., *Mortgages*, pp. 393–394, secs. 221–224; 41 C. J., *Mortgages*, p. 410, sec. 256; Thomas, *Mortgages* (3d ed.), pp. 83–85, sec. 104; 9 Thompson, *Real Property* (1958 replacement), p. 382, sec. 4745.

The thrust of appellant's argument is that the mortgage executed by C & S Cohen, Inc., never became a lien on the premises because the Security National Bank never returned the insurance policies on the life of Carl Cohen. Irving Koren testified that the general import of the May 22, 1958, conference was that collateral was to be substituted for the insurance policies.

Whether the mortgage was conditioned upon the return of the insurance policies is a question of fact. The trial court concluded that at the conference of May 22, 1958, no reference was made to the insurance policies that had been assigned to the bank by Carl Cohen in 1952. On this, the trial court chose to reject the testimony of Koren and to accept the testimony of Schiefelbein. This it had a right to do.

The trial court also concluded that the correspondence subsequent to the conference supported its conclusion that the return of the insurance policies was not a part of the settlement agreement.

The letter from Attorney Hagemann, representing Carl Cohen, to Attorney Stafford, representing the bank, stated that:

"Enclosed you will find a second mortgage executed by C & S Cohen Inc. Mr. Cohen advised me that certain insurance policies are presently being held by Security National and requests there [sic] retender at this time."

The trial court was of the opinion that it was "quite obvious" that this letter was not written by an attorney and that Attorney Stafford could arrive at no other conclusion than that set forth in his letter of October 16, 1958, to the Security National Bank. A copy of this letter was sent to Attorney Hagemann.

"I am also enclosing herewith a copy of the letter dated October 14, from Mr. Hagemann in which he refers to some insurance policy. I do not understand what he means by the 'retender' so I assume he means for you to retain them. I am sending a copy of this letter to

Mr. Hagemann so that if this assumption is incorrect he may let us know."

Attorney Hagemann in turn answered Attorney Stafford's letter on October 22, 1958, as follows:

"Certain policies of insurance on the life of Mr. Cohen are being held by Security National Bank; apparently this is some type of collateral pending the mortgage execution.
"Mr. Cohen requested that these policies be returned to him."

On October 29, 1958, Attorney Stafford again wrote to Attorney Hagemann:

"I have your letter of recent date in regard to the life insurance policy left with the Security Nat. Bank as collateral on the obligation owing to the Security Nat. Bank. I presume there is not much cash surrender value, if any, on these policies but the bank would prefer to retain them as security pending payment of the full amount of the compromise settlement.
"At the time the settlement was made with the son I don't believe there was anything said about these life insurance policies. If I am in error I will be glad to be corrected."

Thereafter, in November, Attorney Hagemann went to the bank to demand the return of the policies. In June and July of 1959, Hagemann saw Stafford and again requested the return of the policies. Hagemann was advised in a letter from the bank dated August 29, 1959, that the policies would be returned to Cohen upon the payment of the settlement agreement.

The trial court was satisfied that the demand for the return of the policies occurred subsequent to the settlement agreement. This determination is not against the great weight and clear preponderance of the evidence. Thus the mortgage was *not* executory.

*Challenging Consideration in Absence of Fraud.*

In the absence of a showing of fraud, is the defendant entitled to defend the foreclosure of the mortgage, under seal, on grounds of want of consideration?

In *Virkshus v. Virkshus,*[4] this court stated:

". . . The seal imports consideration for the mortgage. This imports consideration for the note also. In absence of allegations of fact showing fraud the mortgage cannot be impeached for want of consideration."

Appellant, however, relies upon sec. 891.27, Stats. (formerly sec. 328.27) which reads as follows:

"**Effect of Seal.** A seal upon an *executory* instrument shall be received as only presumptive evidence of a sufficient consideration." (Emphasis added.) [5]

However, because, as we have concluded, the executed mortgage did not constitute an executory instrument as contended by appellant, the trial court was correct in concluding that fraud must be alleged and proven in order to defend against foreclosure upon the grounds of lack of consideration. The seal was conclusive as to the issue of consideration.[6]

*By the Court.*—Judgment affirmed.

---

[4] (1947), 250 Wis. 90, 93, 26 N. W. 2d 156.

[5] *See Frank v. Schroeder* (1941), 239 Wis. 159, 300 N. W. 254.

[6] *See Singer v. General Accident, Fire & Life Assurance Corp.* (1935), 219 Wis. 508, 262 N. W. 702.