MARSHALL-WISCONSIN COMPANY, INC., a Wisconsin corporation, Plaintiff-Respondent,

v.

JUNEAU SQUARE CORPORATION, a Wisconsin corporation; Gertrude Berggren, a limited partner of Marshall-East, a limited partnership; Marshall-East, Inc., a Wisconsin corporation; Harold C. Smith, III, as Executor of the Estate of Harold C. Smith, Jr., and the Estate of Mildred B. Smith, Defendants-Appellants-Petitioners,

William T. COLLINGS; John J. Deutsch; Donald E. Stevens; Eugene N. Grotenhuis; W. George Bowring; Reinke & Schomann, Inc., a Wisconsin corporation; McDonald, Inc., a Wisconsin corporation; City of Milwaukee, a municipal corporation; Marshall-Michigan Co., Inc.; and unknown Heirs or Devisees of Charles Cochrane, Edward Cochrane, and John A. Cochrane, Defendants. [Case No. 83–0491.]

MARSHALL-WISCONSIN COMPANY, INC., a
Wisconsin corporation, Plaintiff-Respondent,

v.

JUNEAU SQUARE CORPORATION, a Wisconsin
corporation; Tennie M. Conway, an individual;
Harold C. Smith, III, individually and as
Executor of the Estate of Harold C. Smith, Jr.
and the Estate of Mildred B. Smith,
Defendants-Appellants-Petitioners,

William T. COLLINGS; John J. Deutsch; Donald
E. Stevens; Eugene N. Grotenhuis; W. George
Bowring; Reinke & Schomann, Inc., a
Wisconsin corporation; McDonald, Inc., a
Wisconsin corporation; City of Milwaukee, a
municipal corporation; and Marshall-Michigan
Co., Inc., Defendants. [Case No. 83–1632.]

MARSHALL-WISCONSIN COMPANY, INC., a
Wisconsin corporation, Plaintiff-Respondent,

v.

JUNEAU SQUARE CORPORATION, a Wisconsin
corporation, Gertrude H. Berggren; Estate of
Harold C. Smith, Jr., and Estate of Mildred B.
Smith, Defendants-Appellants-Petitioners,

William T. COLLINGS; John H. Deutsch; Donald E. Stevens; Eugene N. Grotenhuis; W. George Bowring; Reinke & Schomann, Inc., a Wisconsin corporation, and Marshall-East, Inc., a Wisconsin corporation, Defendants. [Case No. 85–0830.]

Supreme Court

*Nos. 83–0491, 83–1632, 85–0830. Argued March 31, 1987.—Decided June 11, 1987.*

(Also reported in 406 N.W.2d 764.)

For the defendants-appellants-petitioners there were briefs by *George P. Kersten, Ann L. Muchin* and *Kersten & McKinnon,* Milwaukee and oral argument by *George P. Kersten.*

For the plaintiff-respondent there was a brief by *James O. Huber, Mark F. Foley, Nancy J. Kopp* and *Foley & Lardner,* Milwaukee and oral argument by *James O. Huber* and *Mark F. Foley.*

LOUIS J. CECI, J.   This is a review of a decision of the court of appeals[1] which affirmed in part and reversed in part three judgments of foreclosure by the circuit courts of Milwaukee county, Circuit Judges Marvin C. Holz, Hugh R. O'Connell, and Harold B. Jackson, Jr., upon the mortgagees of three separate parcels of property. The three foreclosure judgments were consolidated on appeal to the court of appeals. Each of the foreclosure actions was brought by Marshall-Wisconsin Company, Inc. (Marshall-Wisconsin), respondent here, against Juneau Square Corporation (Juneau Square) and others, the owners of the three parcels and petitioners here. There was a substantial time gap—in one of the cases almost 13 years—between the date that the individual foreclosure actions were commenced and the date upon which judgments were entered. The reason for the delays in prosecution of the foreclosure actions is sharply in dispute. The delays are the basis of petitioners' claim that Wisconsin's failure to prosecute statute, sec. 805.03, Stats.,[2] should now provide the foundation for

---

[1]*Marshall-Wisconsin Co., Inc. v. Juneau Square Corp.,* 130 Wis. 2d 247, 387 N.W.2d 106 (Ct. App. 1986).

[2]That section provides as follows: "**Failure to prosecute or comply with procedure statutes.** For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under sec. 804.12(2)(a). Any dismissal under this section operates as an adjudication on the merits unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order. A dismissal on the merits may be set aside by the court on the grounds specified in and in accordance with sec. 806.07. A dismissal not on the merits may be set aside by the court for good cause shown and within a reasonable time."

dismissal, with prejudice, of each of the foreclosure actions. We believe that the facts of this case provide ample justification for dismissal with prejudice pursuant to sec. 805.03.

## I.

This case is the culmination of nearly fifteen years of protracted litigation dealing with the financial collapse of certain business ventures initiated by Juneau Square. In 1960, Juneau Square began its involvement in what was to be an ambitious office building project in the heart of the business district of downtown Milwaukee. Two office buildings, Juneau Square North and Juneau Square South, were completed by the petitioners in the 1960's. However, by early 1969, Juneau Square was in default on its mortgages on these buildings, due to a failure to pay $245,000 in property taxes. The parties refer to these buildings as the "existing project."[3] Thereafter, the existing project became the subject of two foreclosure actions, one brought by Aetna Life Insurance Company on a first mortgage in November, 1969, and one brought by Marshall-Michigan Company, Inc. on a second mortgage shortly thereafter. Marshall-Michigan entered its foreclosure judgment on January 3, 1972, and Aetna did the same on the following day. The next month, Marshall-Michigan purchased the existing project for a nominal sum at a sheriff's sale; it then sold its interest in the project to Marshall-Wisconsin, a First Wisconsin Corporation subsidiary.

---

[3] A gas station and service garage were constructed and are also part of what is known as the existing project.

There are three parcels of land which are the subject of this lawsuit. The parcels, now vacant, are located directly adjacent to the Juneau Square North project and were to be the site of a high-rise office tower, to be called Juneau Square East and to be built by petitioners. The parties refer to the properties as the "Menos parcel," the "Vartanian parcel," and the "Marshall Street parcel." In May, 1972, Marshall-Wisconsin purchased the notes and mortgages on the Menos parcel; in March, 1973, it purchased the notes and second mortgage on the Vartanian parcel and the notes and mortgage on the Marshall Street parcel; and in May, 1973, it purchased the notes and first mortgage on the Vartanian parcel. The notes and mortgages were purchased from various individuals who were financing the Juneau Square high-rise office project.

Marshall-Wisconsin sued to foreclose on the Menos parcel on July 25, 1972, and commenced foreclosure actions on the Vartanian and Marshall Street properties on August 31, 1973.[4] Little activity occurred in the Menos foreclosure action until mid-year, 1981, and in the remaining actions until early 1982. Trials were scheduled in each of the cases, to be held in the summer and fall of 1982. Foreclosure judgments were finally entered as follows: In the Marshall Street action, on January 17, 1983 (Judge Holz); in the Vartanian action, on July 22, 1983 (Judge O'Connell); and in the Menos action, on April 16, 1985 (Judge Jackson).

[4]The actions were commenced separately in Milwaukee county circuit court, with a different judge being assigned to each case.

The delay in prosecution of each of the foreclosure actions was arguably due to the fact that there were two related cases being prosecuted during the same time period. In the fall of 1972, Juneau Square commenced an action in federal court against Marshall-Wisconsin and other First Wisconsin defendants.[5] Juneau Square initially prevailed in a jury trial at the district court level, but the court ordered a new trial which resulted in a verdict for the defendants. Prior to resolution of the new trial, Juneau Square commenced another action, this one in state court, which alleged various business tort claims.[6] We will summarize the pertinent facts in each of these actions, as a review of those facts will aid the understanding of the issues raised by the parties here.

## THE FEDERAL ACTION

In the federal action, commenced on September 22, 1972, Juneau Square alleged that the defendants, among them the First Wisconsin Corporation and its wholly owned subsidiaries, Marshall-Wisconsin and the First Wisconsin National Bank of Milwaukee (Juneau Square's personal bank); Aetna Life Insurance Company; and Aetna Casualty and Surety Company, conspired to restrain trade by a variety of tortious and fraudulent acts calculated to halt Juneau Square's office building project. The facts are set out in great detail in the two federal decisions, *see,* n. 5,

---

[5]*Juneau Square v. First Wisconsin Nat. Bank of Milwaukee,* 435 F. Supp. 1307 (E.D. Wis. 1977), *aff'd* 624 F.2d 798 (7th Cir. 1980), *cert. denied* 449 U.S. 1013 (1980).

[6]*See, Juneau Square Corp. v. First Wisconsin Nat. Bank,* 122 Wis. 2d 673, 364 N.W.2d 164 (Ct. App. 1985), *review denied* April 16, 1985.

*supra,* but in brief, Juneau Square advanced claims against the defendants for conspiring to restrain trade with respect to Juneau Square's attempts to move forward with the Juneau Square East phase of its office building project and with respect to Juneau Square's attempts to obtain financing for the development of the office building project. Juneau Square alleged antitrust violations of various sections of the Clayton Act, 15 U.S.C.A. secs. 15 and 18 (1970), and of the Sherman Act, 15 U.S.C.A. secs. 1 and 2 (1970).

Juneau Square alleged that First Wisconsin Corporation and the other defendants, including Marshall-Wisconsin, engaged in deceptive and fraudulent conduct aimed at putting Juneau Square out of business. According to Juneau Square, First Wisconsin's eventual acquisition of Juneau Square's existing commercial projects was motivated by its desire to eliminate Juneau Square as a competitor in the development of the downtown commercial building market, which it succeeded in doing. First Wisconsin had plans to build a high-rise office building on a parcel of land located directly adjacent to the proposed site of the Juneau Square East office building project. First Wisconsin successfully carried out those plans, while the Juneau Square East site remains vacant. Juneau Square contended that its repeated attempts to obtain financing for completion of the Juneau Square East project were consistently frustrated; although negotiations with lenders always began smoothly, they were nevertheless abruptly broken off each time, without an explanation that Juneau Square believed to be adequate. Juneau Square alleged that First Wisconsin representatives interfered with these negotiations by urging the lenders not to extend the financing to Juneau Square, which was

necessary to enable it to embark on the construction of the office building project and which would help it remain financially viable with respect to the existing project. Other conspiratorial conduct also allegedly occurred.

Some of the claims raised by Juneau Square were disposed of by way of motions prior to trial. The court granted a directed verdict on other claims at the close of Juneau Square's presentation of its evidence. Only one claim, alleging restraint of trade under sec. 1 of the Sherman Act, was ultimately decided by the jury. The trial began on May 3, 1976, and the jury returned a verdict in Juneau Square's favor on October 1, 1976. The jury awarded $6 million in damages, and, pursuant to the treble damages provision of the Clayton Act, the court entered judgment for $16.5 million. First Wisconsin and the other defendants, except for Aetna, then brought a motion for judgment notwithstanding the verdict and a motion for a new trial. Those post-trial motions were the subject of Judge Robert W. Warren's memorandum decision and order, which was dated July 29, 1977. *See,* 435 F. Supp. 1307. Judge Warren granted judgment notwithstanding the verdict with respect to one of the claims brought under the Sherman Act and ordered a new trial on the other claims. The second trial, concluding on June 19, 1978, resulted in a jury verdict for the defendants, with the jury determining that the defendants were not engaged in a conspiracy against Juneau Square. Juneau Square subsequently brought a motion for a new trial, which was denied by the trial court. The seventh circuit affirmed the judgment on July 3, 1980. *See,* 624 F.2d 798. The United States Supreme Court denied *certiorari* on December 1, 1980. 449 U.S. 1013.

## THE STATE ACTION

In 1977, Juneau Square commenced a lawsuit in the circuit court for Milwaukee county, raising allegations under state law of conspiracy, unfair competition, fraud, tortious interference with business relations, defamation, conversion of trade secrets, and violation of a bank's duty to its customer. Marshall-Wisconsin, First Wisconsin National Bank of Milwaukee, First Wisconsin Development Corporation, First Wisconsin Corporation, and Marshall-Michigan were named as defendants. The allegations arose out of the same facts which had been litigated in federal court, but none of the state-law-based allegations had been raised in the federal action. After the seventh circuit affirmed the decision of the district court in the federal action, the First Wisconsin defendants moved for summary judgment in the state action. First Wisconsin argued that since the tort claims arose out of the same transactions and occurrences as were pled in the federal action, those claims should have been asserted in that action. Judge John E. McCormick granted the summary judgment motion based on *res judicata* principles. The court of appeals affirmed the trial court's grant of summary judgment, stating that,

> "Because all of the subject claims arose out of the same basic factual situation as gave rise to a prior federal antitrust suit, and because Juneau Square did not assert the subject claims in the previous litigation, we hold that the doctrine of *res judicata* precludes this action." 122 Wis. 2d at 676.

A petition for review to this court was denied on April 16, 1985.

## II.

After the complaints in the respective foreclosure actions were filed, Juneau Square filed answers and sought to raise, as affirmative defenses, the same tortious and fraudulent acts pled by it in the federal antitrust suit. In the Marshall Street action, Judge Holz, in a memorandum decision dated April 19, 1982, granted Marshall-Wisconsin's motion *in limine*, which had the effect of precluding Juneau Square from offering evidence in support of its affirmative defenses, on grounds of *res judicata*. Juneau Square also moved to dismiss Marshall-Wisconsin's complaint by way of summary judgment on the grounds that the claims which were the subject of the state court foreclosure action should have been pled as compulsory counterclaims in the prior federal action involving the same parties, citing Fed. R. Civ. P. 13(a).[7] The court determined that the subject matter of the lawsuit before it did not arise out of the same transactions or occurrences which were the subject of the federal court action and held that the foreclosure claims were not required to be pled as compulsory

---

[7]Rule 13(a) provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

counterclaims in the previous federal lawsuit. It therefore denied Juneau Square's motion for summary judgment. In both the Menos and Vartanian actions, Juneau Square's motions to amend its respective answers to expand upon the business tort affirmative defenses were also denied by the trial courts.

Juneau Square made various other motions, each of which was denied. In the Vartanian action, Juneau Square moved to dismiss, before trial, on grounds of failure to prosecute under sec. 805.03, Stats. A similar motion was made after trial in the Menos action. In the Marshall Street action, Juneau Square filed a motion for summary judgment, based upon Fed. R. Civ. P. 13(a), which made reference to Marshall-Wisconsin's prosecution of the foreclosure action, but not in the context of sec. 805.03. In addition, on July 28, 1982, Juneau Square filed a brief in support of various motions (again, in the Marshall Street action) in which it raised the argument that, "The plaintiff Marshall-Wisconsin obtained the benefit of delaying prosecution of the instant case; it should indeed also suffer the consequence required by [case] authorities, namely dismissal." While this argument was only a small portion of the brief and while it did not specifically refer to sec. 805.03 it did cite numerous cases which have construed the failure to prosecute statute. The motions in each of the foreclosure actions were denied.

Juneau Square appealed, and the three foreclosure actions were subsequently consolidated. On March 14, 1986, the court of appeals affirmed the respective decisions of the trial courts, but reversed with respect to one issue raised on appeal.

Specifically, the appeals court first affirmed the trial courts' conclusions that the foreclosure claims

were not compulsory counterclaims under Fed. R. Civ. P. 13(a). The appeals court stated that judicial economy would not have been fostered by requiring the foreclosure claims to be pled in the prior federal action. 130 Wis. 2d at 257.

Second, the appeals court addressed failure to prosecute under sec. 805.03, Stats. The appeals court held that the respective trial courts abused their discretion in denying Juneau Square's motions to dismiss for failure to prosecute, because they failed to state on the record their reasons for denying the motions. The appeals court stated,

> "We have reviewed the record, and the facts therein do not support the trial courts' decisions. In each case Marshall-Wisconsin clearly abdicated its responsibilty as plaintiff to take affirmative action to prosecute the cases. Our supreme court has stated that longstanding legislative, judicial and public policies require that actions not be permitted to slumber indefinitely, as was the case here. Each of the trial courts here should have dismissed the case before it for lack of prosecution." 130 Wis. 2d at 261 (footnotes omitted).

However, the court then went on to uphold the three foreclosure judgments on equitable grounds, stating that,

> "We agree with the trial courts' conclusions that foreclosure of the mortgages should stand. We fashion our own remedy here because of the extreme passage of time involved in these cases. We hold that it would be fruitless to reverse the judgments at this time because upon reversal Marshall-Wisconsin would again obtain foreclosure judgments upon the parcels. Reversal thus would result in injustice to both sides of the

125

conflict because of the duplication of effort and greater costs involved in the litigation that would surely follow. We thus affirm the foreclosure judgments." *Id.* at 263.

It is unclear why the court of appeals thought that dismissal would be "fruitless," but it apparently believed that a dismissal would necessarily be without prejudice.

The appeals court also held that: (1) Juneau Square was barred by *res judicata* principles from litigating, in the foreclosure actions, its affirmative defenses which raised the same allegations of fraud and other business torts as were raised in the prior federal proceeding; and (2) Juneau Square lacked standing to raise affirmative defenses which were based on the federal banking laws. It therefore affirmed the trial courts on those issues. However, the case was remanded because the trial judges had not set off from Juneau Square's mortgage debts the amount of income which Marshall-Wisconsin was accumulating by operating the parcels in question as parking lots. The appeals court ordered the trial courts, on remand, to account for any income produced by operation of the parking lots and to deduct those proceeds from the mortgage debt. The appeals court thus reversed the trial courts on this issue, each of which had refused to allow Juneau Square to raise the issue of set-off or to introduce evidence regarding parking lot income. Juneau Square petitioned this court for review, and review was granted on July 25, 1986.

## III.

Petitioners raise three issues in their brief to this court. Petitioners argue first that a dismissal for

failure to prosecute under sec. 805.03, Stats., is presumptively with prejudice and that a dismissal with leave to relitigate requires a specific showing of good cause to allow the dismissal without prejudice. Thus, petitioners argue that the appeals court erred in (1) assuming that dismissal would necessarily be without prejudice and in (2) dismissing the case without prejudice without identifying "good cause" for so doing.

Petitioners secondly argue that the respondent was required, under Fed. R. Civ. P. 13(a), to plead the Vartanian and Marshall Street foreclosure cases as compulsory counterclaims in the federal antitrust action. Its failure to do so, Juneau Square argues, now bars the litigation of those foreclosures in state court.

Third, petitioners argue that the appeals court erred in holding that *res judicata* principles barred them from raising the allegedly fraudulent and tortious activities of Marshall-Wisconsin as affirmative defenses in the state foreclosure actions. *Res judicata,* petitioners argue, should not preclude litigation of these equitable defenses merely because those defenses allege the same facts which were the subject of the prior federal antitrust action. The trial in federal court was based only on the limited issue of restraint of trade; the issues of fraud and other wrongful conduct by Marshall-Wisconsin were never litigated and resolved in the federal action. Therefore, because the equitable defenses raised in the state foreclosure actions do not directly relate to any issues actually disposed of in the federal action, *res judicata* principles should not operate to bar petitioners from now raising those defenses in the very action in which those defenses are directly at issue.

Petitioners correctly state that we need not consider the compulsory counterclaim and *res judicata* issues if we determine that the appeals court should have dismissed the foreclosure actions for failure to prosecute, with prejudice. We believe that the appeals court erred in its interpretation and application of sec. 805.03, Stats.; dismissal for failure to prosecute under that statutory section *is* presumptively with prejudice, and Marshall-Wisconsin's explanation for the delay is not sufficient to satisfy the "good cause" standard for dismissals not on the merits. Therefore, we need not consider the other issues raised by the parties, since this case may be disposed of on the basis of sec. 805.03 alone.

## IV.

Petitioners argue that dismissal for failure to prosecute under sec. 805.03 is presumptively with prejudice. The burden remains on the plaintiff throughout the course of litigation to see to it that the case is brought to trial within a reasonable period of time. If the plaintiff fails in sustaining this burden, "good cause" for the delay in prosecution must be shown. Marshall-Wisconsin failed at meeting that burden, petitioners argue. The appeals court, Juneau Square continues, was correct in holding that the trial courts abused their discretion in failing to dismiss the foreclosures for lack of prosecution. However, the appeals court was incorrect in assuming, as it apparently did, that dismissal would be fruitless.[8] The

[8]Petitioners maintain that dismissal would not have been fruitless. Citing *Security National Bank v. Cohen,* 41 Wis. 2d 710, 714, 165 N.W.2d 140 (1969); *Connor v. Connor,* 218 Wis. 336, 343, 259 N.W. 729 (1935); and *Doyon & Rayne Lumber Co. v. Nichols,*

appeals court, according to petitioners' reading of sec. 805.03, erred in assuming that dismissal was without prejudice without articulating, as the statute requires, "good cause" for permitting Marshall-Wisconsin leave to relitigate. The statutory language itself requires that good cause for leave to relitigate be "shown." No showing was made here, petitioners argue, and absent that showing, dismissal should have been on the merits.

The policy underlying the failure to prosecute statute, petitioners further contend, supports dismissal with prejudice. Citing *George Walter Brewing Co. v. Henseleit,* 146 Wis. 666, 669–70, 132 N.W. 631 (1911), petitioners argue that sec. 805.03 was intended to operate as a statute of limitation, so as to ensure that the administration of justice proceeds smoothly, without unreasonable delay.

The appeals court advanced no specific reasons why there was "good cause" for declining to dismiss the claims with prejudice, petitioners argue, and Marshall-Wisconsin likewise cannot produce any factors which would satisfy that statutory standard. Instead, there are an ample number of factors militating against a finding of good cause for failure to prosecute, such as:

> (1) Marshall-Wisconsin made a deliberate tactical choice to delay prosecution of the foreclosure actions, and, for this reason, a dismissal with

196 Wis. 387, 390, 220 N.W. 181 (1928), petitioners argue that when a debt is rendered unenforceable, the lien or mortgage is extinguished. Therefore, had the court dismissed the case with prejudice, the mortgage debts would have been extinguished and a "new" foreclosure action could not have been subsequently brought.

prejudice would not be too harsh. Marshall-Wisconsin delayed because it wanted to de-emphasize its wrongful acts in attempting to push Juneau Square out of the office building market in downtown Milwaukee;

(2) Principles of fairness should preclude Marshall-Wisconsin from profiting from its delay in prosecuting the foreclosure actions. Marshall-Wisconsin prevailed in the state suit brought by Juneau Square,[9] successfully precluding Juneau Square from raising claims of business torts allegedly committed by Marshall-Wisconsin, on grounds that the federal antitrust suit barred litigation, based on *res judicata* principles, of those claims. If the court affirms dismissal of the foreclosure actions without prejudice, Marshall-Wisconsin will achieve the result of litigating the foreclosures free of petitioners' state-law-based business tort defenses, thus resulting in unfairness to Juneau Square and operating to reward Marshall-Wisconsin for its delay;

(3) Marshall-Wisconsin is not a disappointed lender that purchased the mortgages to obtain repayment. It rather purchased the notes in order to foreclose and obtain possession of the property. Its reasons for assuming the debt should not now justify exempting Marshall-Wisconsin from the normal dismissal with prejudice rule;

(4) Through nine years of deliberate delay, Marshall-Wisconsin has succeeded in almost tripling the amount due on the properties in question. This type of conduct is against public policy and should not be rewarded by allowing dismissal with leave to relitigate;

(5) Marshall-Wisconsin should have either pled the foreclosures as compulsory counterclaims

---

[9]*See,* 122 Wis. 2d 673.

in the federal action, or it should have prosecuted the foreclosures in a timely fashion. Its failure to do either provides additional support for a dismissal with prejudice;

(6) Juneau Square will not receive a "windfall" if the cases are dismissed with prejudice; Juneau Square is now defunct, so it cannot benefit, and, upon dismissal, ownership will revert to the original purchasers; and

(7) The equities of the case favor dismissal with prejudice. Marshall-Wisconsin engaged in numerous acts of misconduct constituting a "moral outrage," for which it should not now benefit.

Respondent counters petitioners' arguments by maintaining that the alleged existence of an informal agreement between the parties to delay prosecution of the foreclosures, pending resolution of the federal antitrust suit, should estop Juneau Square from now arguing that dismissal should be with prejudice. Marshall-Wisconsin asserts that "[a]ll counsel, including Petitioners', and the three trial courts agreed to hold the foreclosures in abeyance until Petitioners' claims were determined in the federal action ...." Petitioners challenge respondent to produce evidence in the record that such an agreement actually existed. Marshall-Wisconsin further contends that petitioners obstructed its efforts to proceed with the prosecution of these actions at every stage of litigation. Petitioners presumably thwarted respondent's attempts to proceed by pushing for a stay in the proceedings.[10]

---

[10]A formal stay was obtained in a case which is totally unrelated to the foreclosures at issue here, and Marshall-Wisconsin repeatedly refers to that stay to support its contention that the foreclosure actions were also stayed. The action, known as the "Wil-Ten" action, was brought by Marshall-Wisconsin against

Marshall-Wisconsin next argues that petitioners have waived their right to seek dismissal for failure to prosecute. They should have sought to dismiss the foreclosures for failure to prosecute at the time the antitrust suit was instituted. Instead, petitioners waited until 1982 to complain. In the Menos action, a motion was not brought until after trial, and in the Marshall Street case, no motion *specifically* alleging a sec. 805.03 failure to prosecute was ever brought. In the interest of preventing waste of judicial resources, respondent argues, the foreclosures should not be dismissed with prejudice. Respondent further alleges that petitioners' counsel requested many of the delays.

Marshall-Wisconsin contends that it should not be dispositive that it failed to obtain a formal written stay, though counsel at oral argument conceded that, in retrospect, it would have been the preferred course to have obtained such a stay.

Marshall-Wisconsin finally argues that dismissal on the merits is not presumed by the failure to prosecute statute. Rather, citing the Judicial Committee's notes to sec. 805.03, Stats., respondent argues that dismissal with prejudice is appropriate only in cases of "egregious conduct," for example, where a party fails to obey a court order (citing *Trispel v. Haefer,* 89 Wis. 2d 725, 732–35, 279 N.W.2d 242 (1979)). Respondent contends that the appeals court was correct when it concluded that equity demanded foreclosure, especially when considering that petition-

---

Wil-Ten Co., Inc. (Juneau Square's parent company) and three of Wil-Ten's principals during the pendency of the federal antitrust suit. The action was brought to recover a claimed balance due on a promissory note against the corporate defendant and the individual defendants as guarantors.

ers will receive a windfall if the foreclosures are dismissed on the merits. Under these circumstances, dismissal with prejudice would not be just.

## V.

Section 805.03, Stats., gives the court in which an action is pending the discretion to "make such orders in regard to the failure [to prosecute] as are just . . . ." The statute plainly states that "[a]ny dismissal under this section operates as an adjudication on the merits unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order." Under the rules of statutory construction, we are to give effect to the intent of the legislature. In determining that intent, first resort must be to the language of the statute itself. If the meaning of the statute is plain, we are prohibited from looking beyond the language of the statute to ascertain its meaning. Only if the statutory language is ambiguous or unclear may we refer to outside sources to aid statutory construction. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 538, 345 N.W.2d 389 (1984).

We believe that the meaning of the statute is clear on its face; the plain meaning of the statute indicates that, contrary to Marshall-Wisconsin's assertions, dismissal under sec. 805.03 is presumptively with prejudice. The appeals court, therefore, erred in apparently assuming that dismissal was not on the merits, without making the statutorily required finding that there was good cause for Marshall-Wisconsin's prosecutorial delay. Our examination of the briefs and of the authorities in the record cited by

Marshall-Wisconsin in an attempt to explain the delay leaves us convinced that Marshall-Wisconsin has failed to meet its burden of moving forward in a reasonable manner with prosecution of the foreclosures or, in the alternative, providing the court with an adequate explanation for its protractive behavior.

While the statute is permissive and not mandatory, *Neuhaus v. Clark County,* 14 Wis. 2d 222, 226, 111 N.W.2d 180 (1961); *Wisconsin Lumber & Supply Co. v. Dahl,* 214 Wis. 137, 140, 252 N.W. 714 (1934), there is the presumption that once the court decides that dismissal is warranted, dismissal is to be with prejudice, operating to preclude reinstitution of the action at a later time. *See, George Walter Brewing,* 146 Wis. at 669, where the court stated,

> "It is undoubtedly the law of this state that a seasonable voluntary dismissal by plaintiff of his cause of action, or a dismissal pursuant to a stipulation, is no bar to the bringing of a subsequent action for the same cause and between the same parties. [Citation omitted.] But it does not follow from such a rule that a dismissal pursuant to sec. 2811a [the statutory predecessor to current sec. 805.03] has the same effect."

Also, *see, Pautsch v. Clark Oil Co.,* 264 Wis. 207, 210, 58 N.W.2d 638 (1953), holding that a judgment of dismissal under the failure to prosecute statute "is *res adjudicata* as to all matters necessary to support a judgment of dismissal on the merits." Also, *see, Cukrowski v. Mt. Sinai Hospital,* 67 Wis. 2d 487, 500, 227 N.W.2d 95, *cert. denied* 423 U.S. 914 (1975).

The presumption of dismissal with prejudice is imperative if the statute is to maintain any efficacy. The statute has rightly been characterized by petition-

ers as being in the nature of a statute of limitations, prohibiting a plaintiff from reinstituting an action involving the same parties and claims once the court has dismissed for plaintiff's failure to prosecute the action within a reasonable time period. In *George Walter Brewing,* 146 Wis. at 669, we described the injustice that might result if a suit is not "seasonably brought to trial" and described the failure to prosecute statute as follows:

> That it was intended as a statute of limitation upon the time within which a suit might be prosecuted is evident both from its language and the rules of law applicable to nonsuits and dismissals existing at the time it was passed. If it be not so construed it is meaningless, for it would then not affect the status of dismissals in the least. Before it was passed a plaintiff could suffer a nonsuit, or dismiss at any time and begin over again. If he can do so after the court has dismissed under the statute, then nothing has been accomplished by its enactment .... It is now as much the policy of the law of this state that a suit shall be seasonably prosecuted as that it shall be seasonably begun .... The statute is one of rest. *Id.* at 669–70.

This court has also stated that,

> "It is considered well established that a court has the inherent power to resort to a dismissal of an action in the interest of orderly administration of justice. The general control of the judicial business before it is essential to the court if it is to function .... In *Smith v. Carter* (1910), 141 Wis. 181, 184, 122 N.W. 1035, this court considered the dismissal of a complaint for lack of prosecution to be in the field of the court's broad discretion over the control

135

of cases and stated, 'It is the duty of the trial courts, independently of statute and under inherent powers, to discourage it [protraction of litigation] as much as possible and to refuse their aid to those who negligently or abusively fail to prosecute the actions which they commence.'" *Latham v. Casey & King Corp.,* 23 Wis. 2d 311, 314–15, 127 N.W.2d 225 (1964).

More recently, the court stated that,

> "It has long been the legislative, judicial and public policy in this state that court actions should not be permitted to slumber indefinitely; that a plaintiff is under obligation to bring his action to trial within a reasonable time; with dismissal the indicated penalty for the suitor who sleeps away his or her day in court." *Taylor v. State Highway Comm'n,* 45 Wis. 2d 490, 494, 173 N.W.2d 707 (1970) (footnotes omitted).

One policy behind this discretionary power of dismissal is the interest in the orderly administration of justice, *Latham,* 23 Wis. 2d at 314, but another equally compelling purpose is to, as stated in *Taylor,* punish the plaintiff who has engaged in dilatory tactics. Also, *see, Hine v. Grant,* 119 Wis. 332, 336, 96 N.W. 796 (1903), stating that the purpose of the statute is "to punish the suitor who sleeps away his day in court, and give trial courts a certain and speedy means of cleaning the records of mere deadwood ...." This court has thus repeatedly stated that it is the plaintiff's burden to proceed with prosecution of the action within a reasonable period of time. *Taylor,* 45 Wis. 2d at 494; *Lowe v. Ring,* 151 Wis. 664, 665, 139 N.W. 429 (1913); *Gawin v. Redevelopment Authority of*

*Milwaukee,* 52 Wis. 2d 380, 384, 190 N.W.2d 201 (1971), citing *Lawrence v. MacIntyre,* 48 Wis. 2d 550, 556, 180 N.W.2d 538 (1970). It is not the judge's duty or the clerk's duty to see to it that trial proceeds swiftly, *Cukrowski,* 67 Wis. 2d at 497; *Wisconsin Lumber & Supply,* 214 Wis. at 142, nor is it opposing counsel's duty to expedite litigation, *Neuhaus,* 14 Wis. 2d at 227.

■ This court has ordered dismissal for the failure of a party to abide by a trial court's pretrial order. *See, Trispel,* 89 Wis. 2d 725. While Marshall-Wisconsin did not disobey a court order, as did the prosecuting party in *Trispel,* its conduct in prosecuting these actions was nevertheless sufficiently egregious to warrant dismissal, on the merits, for failure to prosecute. A court's right to dismiss actions is not limited to a prescribed set of factual situations. Rather, a court retains the *inherent* power to dismiss actions pending before it if they are not being prosecuted in a reasonably timely manner. *Cukrowski,* 67 Wis. 2d at 497. "'[The judge] has the ... responsibility of dismissing stale cases which clog judicial calendars.'" *Id.,* quoting *Lawrence,* 48 Wis. 2d at 556. This power and responsibility exists *irrespective of whether the nonprosecuting party has brought motions for dismissal* for failure to prosecute. *Zeis v. Fruehauf Corp.,* 56 Wis. 2d 486, 491–92, 202 N.W.2d 225 (1972). The reason is simple: as indicated in *Neuhaus,* it is not the defendant's duty to move forward with prosecution of the action. That duty remains with the party who began the lawsuit.

This is an important consideration because Marshall-Wisconsin places great emphasis on the fact that a motion to dismiss for failure to prosecute was not

brought until after trial in the Menos action.[11] In addition, Marshall-Wisconsin points out that a motion to dismiss for failure to prosecute, based *specifically* on sec. 805.03, Stats., was never brought at all in the Marshall Street action. However, as indicated by petitioners, a motion for summary judgment was brought before trial in that foreclosure proceeding, based on Fed. R. Civ. P. 13(a); as part of that motion, petitioners argued that Marshall-Wisconsin should be barred from further prosecuting the foreclosure action by operation of that federal rule. It also filed a brief nearly two months prior to trial (primarily dealing with motions on other issues) which included a section delineating Marshall-Wisconsin's duty to go forward with prosecution of the action and describing the court's corresponding duty, under authorities such as *Zeis,* to dismiss stale claims for lack of prosecution. Neither motion was specifically based on sec. 805.03. However, we do not believe that to be determinative, based on language in *Zeis* to the effect that a court has the power and duty to dismiss stale claims, whether or not the defendant moves to dismiss for failure to prosecute. Marshall-Wisconsin's objections to Juneau Square's failure to file a motion in the Menos action until after trial are invalid for the same reason.

We believe that dismissal with prejudice is necessary in circumstances such as these "if the trial courts are to be encouraged to facilitate and expedite the trial of their cases." *Trispel,* 89 Wis. 2d at 736.[12] This

---

[11]A motion to dismiss for failure to prosecute was brought prior to trial in the Vartanian action.

[12]Though *Trispel,* as stated earlier, was limited to an attorney's failure to comply with a pretrial order, we believe that the

case presents just such a circumstance, and we believe that the appeals court was correct insofar as it held that the foreclosures should have been dismissed for failure to prosecute under sec. 805.03; however, it erred insofar as it assumed that dismissal would be "fruitless" and, therefore, without prejudice. The appeals court erred in so doing because Marshall-Wisconsin failed to produce evidence constituting "good cause" for the delay in prosecution of the actions. Marshall-Wisconsin has failed to show a "clear and justifiable excuse" for the delay, as it must do if it is to overcome the presumption of dismissal with prejudice. *See, Taylor,* 45 Wis. 2d at 494. It is not dispositive, for purposes of satisfying this burden, that a factually related lawsuit was being prosecuted in federal court during the time that the foreclosures were pending in state court. *See, Wisconsin Lumber & Supply,* 214 Wis. at 140–41; and *Taylor,* 45 Wis. 2d at 495–96.

The imposition of a sanction is further justified when one considers the fact that Marshall-Wisconsin never obtained a court order staying any of the foreclosure proceedings. Nor did Marshall-Wisconsin otherwise formally enter into a stipulation with counsel for Juneau Square that the foreclosures should be delayed pending resolution of the federal action. Either of those actions by Marshall-Wisconsin could have excused its delay and might have led to a different result today. For example, in *Trispel,* the

---

principles enunciated there are equally applicable here, where a party has not fulfilled its duty to prosecute with due diligence and speed. As stated in *Trispel,* the mere *existence* of sec. 805.03 should be sufficient notice to practicing attorneys that meaningful sanctions will be imposed for repeated stalling in prosecution of an action. *Id.*

court stated that counsel's failure to abide by a pretrial order might have been cured had counsel formally asked the court for an extension of time to produce the court-ordered documents in question. 89 Wis. 2d at 735. Similarly, in *Hine*, 119 Wis. 332, this court relieved plaintiff from a trial court order of dismissal on the merits because defendant's counsel had entered into a written stipulation, in which a continuance was explicitly agreed upon. The court thus held that the dismissal order entered by the trial court ought to be vacated, despite the fact that plaintiff's actions in prosecuting the case amounted to "sheer and inexcusable neglect." *Id.* at 335–36.

Marshall-Wisconsin relies heavily on the *Hine* case for the proposition that the delay in prosecution here ought to be excused. Respondent contends that petitioners *did* in fact agree to stay the foreclosure proceedings, pending resolution of the federal action. However, the record does not bear out Marshall-Wisconsin's assertions. To support its contention that an agreement to stay existed, Marshall-Wisconsin does not point to a written agreement or court order. Instead, it cites to self-serving documents such as an affidavit by one of its own attorneys in which that attorney asserts that no action was taken (in the Vartanian action) due to a "mutual understanding" between himself and counsel for Juneau Square. In that same affidavit, Marshall-Wisconsin's counsel also refers to the formal stay which was entered by the court in the "Wil-Ten" action (*see,* n. 10, *supra*), and, in its brief, Marshall-Wisconsin seems to imply that the fact that a stay was entered in the Wil-Ten action lends support to a finding that a stay was entered in these foreclosures as well. That is a leap of logic which this court refuses to take.

140

Respondent additionally refers to a circuit court docket card (in the Menos action) which makes reference to the federal antitrust action. Marshall-Wisconsin relies on this docket card entry to support its argument that the Menos foreclosure was being held in abeyance pending the outcome of the federal action. An entry made by a court clerk on a docket card hardly supplies the type of documented evidence we believe is necessary to establish the existence of a formal agreement between the parties or a court order to stay the proceeding. And in any case, the same docket card also contains an entry, made in 1973, indicating that counsel for Marshall-Wisconsin "would get [the] case moving."

Absent documented proof of a court-ordered stay in the proceedings or a formal, written agreement between the parties, none being present here, Marshall-Wisconsin should not now be heard to argue that Juneau Square consented to or acquiesced in the delay in prosecution of the foreclosures. Nor should it be heard to argue that Juneau Square has somehow "waived" its right to assert that the foreclosures should be dismissed for failure to prosecute. If we were to so hold, we would be weakening, beyond recognition, the principle which states that the duty of expediting prosecution of an action remains with the party who institutes the action, and with no one else. *Neuhaus,* 14 Wis. 2d at 227. This we refuse to do.

The Menos foreclosure has been pending since July, 1972, and the Marshall Street and Vartanian foreclosures have been on the court dockets since August, 1973. Marshall-Wisconsin now attempts, nearly fifteen years later, to provide an explanation for its delay and to shift the blame for that delay to Juneau Square. Given the substantial time period

involved, the statutory presumption that dismissal is with prejudice, and Marshall-Wisconsin's failure to show "good cause" for the delay or to produce documented proof of an agreed-upon stay in the proceedings, we now hold that the appeals court erred in dismissing the foreclosures without prejudice. Marshall-Wisconsin has had ample notice of the potential for dismissal with prejudice of these actions; it could have avoided this result had it either proceeded diligently with prosecution of these actions or obtained a stay. Because it has failed to do either, the cases must be dismissed, with prejudice; any other result would reward Marshall-Wisconsin for its delay and would thwart the purpose underlying the failure to prosecute statute.

The decision of the court of appeals is affirmed insofar as it held that the trial courts abused their discretion in not dismissing the foreclosures on the basis of a failure to prosecute. However, the decision of the appeals court is reversed insofar as it held that dismissal was to be without prejudice. Because we dispose of this case on the issue of failure to prosecute, we need not consider the other issues raised by the parties.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part, and the causes are remanded to the circuit courts with instructions to dismiss the foreclosure actions, consistent with this opinion.

STEINMETZ, J. (*dissenting*). The three trial courts denied Juneau Square's motions to dismiss for failure to prosecute. The court of appeals held that the trial courts respectively abused their discretion in denying the motions, however, not on the merits but

due to the failure of the trial courts to state on the record the reasons for denying the motions. The court of appeals did not remand the cases to the individual trial courts for those courts to create a record of the reasons that the motions to dismiss were not granted. Instead, the court of appeals decided that granting any motion to dismiss for lack of prosecution would be "fruitless" because it believed that any dismissal would necessarily be without prejudice. If the claims were dismissed without prejudice, the court of appeals reasoned, the plaintiffs would be free to refile identical actions after the date of dismissal.

The majority dismisses all the claims with prejudice without stating adequate reasons and without remanding to the trial courts to determine what the trial courts' reasons were for denying the motions to dismiss. I believe the record does not support the methodology of either the court of appeals or the majority, and that both err by proceeding without a remand. Why should the respondents suffer when the three trial courts did not make proper findings? I suspect the individual trial courts found that the foreclosure actions need only be prosecuted if Juneau Square lost its claims in federal court and that holding the foreclosure actions for a decision in the federal action was proper.

If the court of appeals is reversed because it dismissed the cases without prejudice without identifying "good cause" for so doing, then the actions should be remanded to that court for good cause to be stated. To do otherwise is to ignore the work and decision of the court of appeals without giving that court an opportunity to state what the majority believes is lacking. Also, why should Marshall-Wiscon-

sin be punished when the court of appeals did not make findings leading to the good cause conclusion?

All that Juneau Square Corporation does before this court is challenge the Marshall-Wisconsin Company, Inc. to produce evidence in the record that an agreement actually existed between the attorneys on behalf of the parties not to require Marshall-Wisconsin to prosecute its foreclosure actions. This is a far cry from denying that an agreement existed or that there was no evidence of an agreement. If there was an agreement to suspend proceedings until after the federal action was finally resolved, the existence of the agreement would be consistent with the fact that Juneau Square only brought a motion to dismiss for lack of prosecution in the *Menos* case after the trial was concluded, rather than before or during the trial. There are entries in the *Menos* case that Attorney Kersten on behalf of Juneau Square requested the case be delayed on at least two occasions. That such an agreement may have existed is consistent with a motion to dismiss being brought only after trial in the *Menos* action. The cases should be remanded to the court of appeals for a listing of "good cause" or to the trial courts for the reasons relied on for denying Juneau Square's motions to dismiss.

It is unfathomable how the majority can find Marshall-Wisconsin's failure to prosecute as "egregious conduct" required in sec. 805.03, Stats., when neither the trial courts nor court of appeals on the same record denied the motions to dismiss or found a lack of prejudice for the dismissal. The trial courts each followed sec. 805.03, and in their discretion made "such orders in regard to the failure [to prosecute] as are just." The fact that the trial courts denied the motions made it unnecessary for those courts to

discuss the merits for dismissal without prejudice since the motions were denied, not granted.

The majority fails to remand or look at the record for its decision but rather states:

> "Our examination of the briefs and of the authorities in the record cited by Marshall-Wisconsin in an attempt to explain the delay leaves us convinced that Marshall-Wisconsin has failed to meet its burden of moving forward in a reasonable manner with prosecution of the foreclosures or, in the alternative, providing the court with an adequate explanation for its protractive behavior." Majority opinion at 133–134.

It is not for this court to look for an adequate explanation, but rather this court must look to the trial courts or court of appeals to determine whether they properly found good cause or lack of merit for motions to dismiss. Furthermore, we are not to rely on statements in briefs (not described or analyzed as to their inadequacies) or authorities (unlisted in the decision and not discussed) for decisions but on the record before the trial courts to determine whether there was an abuse of discretion and before the court of appeals to determine whether there was "good cause" for not dismissing with prejudice and to remand if those ingredients have not been discussed.

The cases cited by the majority at pages 19 and 20 of the slip opinion are relevant in the case where this court is reviewing a trial court's granting of a motion to dismiss; however, in the instant actions, the cases were not dismissed but rather the motions to do so were denied.

The majority at majority opinion at 134–135 compares these cases to *Taylor v. State Highway Comm'n.,*

145

45 Wis. 2d 490, 494, 173 N.W.2d 707 (1970) by applying the rule to "punish the plaintiff who has engaged in dilatory tactics." The majority is not in a position to determine dilatory tactics nor should it "punish" the plaintiff, especially where the three trial courts have each denied the motions to dismiss on the same records and the court of appeals has found no prejudice, even though not stating the good causes for such determination.

The majority goes so far to avoid the lack of precedence for its action as to state: "While Marshall-Wisconsin did not disobey a court order, as did the prosecuting party in *Trispel,* its conduct in prosecuting these actions was nevertheless sufficiently egregious to warrant dismissal, on the merits, for failure to prosecute." Majority opinion at page 21. A finding of egregious conduct or the need to punish a litigant should be reserved to the trial court and a failure to obey its order and this court should only determine an abuse of discretion.

Juneau Square did not base a motion in the individual trial courts specifically on sec. 805.03, Stats., on which the majority bases its reasoning and in the *Menos* case it made no motion until after trial. Under sec. 805.03 it is up to the individual trial judge in each particular case to determine whether the plaintiff's conduct, or lack of it, justifies a dismissal. In deciding the question, the judge is entitled to take into account his own thinking, the court's calendar and the rate of case intake and disposition. *Neylan v. Vorwald,* 124 Wis. 2d 85, 91, 368 N.W.2d 648 (1985). Trial courts are given discretion to make whatever orders "as are just." Section 805.03 should only be applied to dismiss an action in cases of "egregious conduct" by a party. *Id.* at 95. When this court finds egregious conduct, it

does not find the trial courts abused their discretion but rather preempts their statutory discretion.

In two of the foreclosure cases, *Menos* and *Marshall Street,* the first motion to dismiss under sec. 805.03, Stats., was apparently filed after trial. In the other, *Vartanian,* apparently no motion to dismiss under sec. 805.03 was ever filed, but the issue was raised on appeal. By the majority now dismissing for failure to prosecute without remanding to the trial courts for such action, the most Marshall-Wisconsin can do is to explain the delay in prosecution. There is no opportunity to look for alternatives to dismissal and no opportunity for Marshall-Wisconsin to cure its behavior. The dismissal motions and this court's granting them on appeal violate Marshall-Wisconsin's due process rights. If due process rights of Marshall-Wisconsin are violated, this surely would be "good cause shown" for the court of appeals dismissing without prejudice under sec. 805.03.

This court should not on the record in this case find that Marshall-Wisconsin "failed to produce evidence constituting 'good cause' for the delay in prosecution of the actions." Majority opinion at 139. This finding of fact reverses the application of the law made in three trial courts and the court of appeals. There is no reference by the majority to the record as being persuasive as to why the trial courts and court of appeals are in error.

The historic value of the truth that there was a nonexecuted agreement to not proceed in state courts is the entry made by a clerk in the *Menos* action on a docket card that the action was being held in abeyance pending the outcome of the federal action. This plus a formal stay entered by the trial court in the *Wil-Ten* action lend support to Juneau Square acquiescing in

147

the delay. Marshall-Wisconsin is entitled at least to a factual hearing in the trial courts as to any agreement between the parties for delay or its absence or knowing permitted acquiescence by Juneau Square. This court has never before required "documented proof of a court-ordered stay in the proceedings or a formal, written agreement between the parties" (majority opinion at 141 to avoid a punitive finding of egregious conduct in delay. This is the most sweeping part of the holding by the majority.

Without any foundation at all the majority finds: "Marshall-Wisconsin has had ample notice of the potential for dismissal with prejudice of these actions" with which "it could have avoided this result had it either proceeded diligently with prosecution of these actions or obtained a stay." Majority opinion at 142. The record does not bear out this conclusion.

Even if the majority's decision is made in an effort to terminate this long litigation, the decision will not have that result. The parties admitted at oral argument that no matter what the result of the appeal, the case had to be remanded to the trial courts for an accounting of the proceeds of the parking lots that have been on the properties involved for some time. Therefore, it would take little effort for the trial courts to create a record for dismissing the actions with prejudice, if the respective judges decide within their discretion to dismiss.

I dissent and would modify and affirm the court of appeals decision either remanding to the court of appeals for good cause findings for dismissal of the causes without prejudice or remanding the cases to the three trial courts for findings of reasons for the denials of the motions for dismissal in each of the

148

three cases as to why they found no abusive failure to prosecute.