CUKROWSKI and others, Appellants, v. MT. SINAI
HOSPITAL, INC., and others, Respondents.*

*No. 389. Submitted under sec. (Rule) 251.54 March 6, 1975.—
Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 95.)

* Motion for rehearing denied, with costs, on June 3, 1975.

488

For the appellants the cause was submitted on the brief of *Rowan, Slaby, Mueller & Ilse,* attorneys, and *Donald H. Mueller* and *Charles Rowan* of counsel, all of Milwaukee.

For the respondents the cause was submitted on the joint brief of *Arnold, Murray & O'Neill,* attorneys, and *Robert C. Watson* of counsel, all of Milwaukee, for Dr. Richard L. Franklin and Dr. Walter Hogan; by *Binder, Zirbel & Howard,* attorneys, and *Irving W. Zirbel* of counsel, all of Milwaukee, for Dr. Irvin M. Becker and Dr. Henry M. Goldberg; by *C. Donald Straub* of Milwaukee for Dr. Phillip S. Guzelian; and by *Fulton, Menn & Nehs* of Appleton for Mt. Sinai Hospital and Dr. Herbert A. Oxman.

CONNOR T. HANSEN, J.

On February 15 and 16, 1967, Walter Cukrowski allegedly entered Mt. Sinai Hospital to have his esophagus dilated with a mosher bag. The complaint alleges that

during the course of this surgical procedure, Cukrowski's esophagus was perforated, which perforation went undetected for sixteen hours because of the inadequate postsurgical facilities and care. The exact extent of Cukrowski's disability from the effects of this alleged negligence is not disclosed in the record. It is alleged, however, that he incurred $75,000 in medical expenses in order to save his life and that he has some type of permanent disability.

We consider the dispositive issues on this appeal to be:

1. Did the trial court abuse its discretion in entering orders challenged by the plaintiffs?

2. Did the trial court abuse its discretion in dismissing the complaint?

3. Were the plaintiffs denied due process and equal protection of the laws?

The instant action was commenced on February 14, 1970, approximately three years after the alleged negligence, and one day before the statute of limitations would have run. Lawyer Mueller was retained by the plaintiffs, on a contingent fee basis, in August, 1969, six months before the complaint was given to the sheriff for service. Allegedly due to the assurances of counsel for the plaintiffs that he would probably serve an amended complaint making it unnecessary to immediately answer the original complaint, the defendants' answers were served on the following dates: Becker and Goldberg, April 1, 1970; Hogan, March 3, 1971; Franklin, March 5, 1971; Guzelian, September 13, 1972; and hospital and Oxman, January 11, 1973.

Between the service of the summons and complaint in February, 1970, and September 11, 1972, no action was taken of record by counsel for the plaintiffs with two exceptions. On February 10, 1971, a deposition was taken of Cukrowski to perpetuate his testimony at the plaintiffs' initiative. On April 1, 1970, and again in March,

1971, the plaintiffs attempted unsuccessfully to subpoena Oxman, then a resident of Minnesota, for an adverse examination.

On August 4, 1972, a motion was made by Becker and Goldberg to sustain their demurrers to the complaint of Kathleen Cukrowski. Counsel for the plaintiffs opposed the motion, a hearing was held, and an order entered by the trial court sustaining the demurrer on September 18, 1972.

On September 27, 1972, Becker and Goldberg served and filed a certificate of readiness and notice of trial. At this time, neither the hospital nor Oxman had answered the complaint. On October 19, 1972, plaintiffs' counsel moved for an order striking the notice of readiness for trial, alleging in his affidavit that he had an agreement with several of the defendants' lawyers that there might be an amended complaint and that they need not answer. Counsel also asserted that he needed more time to collect evidence and take depositions of potential witnesses. A hearing was held on October 30, 1972, and the motion to strike the notice was denied by written order of the trial court dated November 3, 1972.

A pretrial conference, in which all parties participated, was held on January 5, 1973. Pursuant to that conference a pretrial order, dated January 16, 1973, set the trial for July 10, 1973, and required that the plaintiffs notify the defendants of the names of experts they intended to call at the trial and treatises they intended to use by May 11, 1973. The defendants were required to reciprocate with names and titles by June 10, 1973.

On February 14, 1973, plaintiffs noticed a deposition to be taken of Elizabeth Thompson, a registered nurse at the hospital, to be taken on March 6, 1973, and issued a subpoena for her to appear. Pursuant to a show cause order initiated by Franklin and Hogan, a hearing was held on February 26, 1973, before LEANDER J. FOLEY, JR.,

circuit judge, at which time defendants requested that the deposition be postponed because of a scheduling conflict of the lawyers. Plaintiffs' counsel opposed the postponement on the ground that he had no time available in April to conduct the deposition and that if postponed, he would have insufficient time to take other necessary depositions. Counsel also asserted that he was unable to get the lawyers for the various defendants to cooperate on picking a mutually convenient time to hold the necessary depositions. By order dated March 1, 1973, Judge FOLEY adjourned the deposition to April 6, 1973, or such other time as counsel for the parties could agree upon.

On March 2, 1973, plaintiffs noticed an adverse deposition of Michael Elliot, the hospital administrator, to be held on March 20, 1973. By an order to show cause, the lawyers for Franklin and Hogan moved for an adjournment of this deposition. The reason given was that the lawyers were going to be trying a case on the date in question. A hearing was held on March 19, 1973, at which time plaintiffs' counsel again informed the court that if the depositions were all delayed until April, that he would not be able to fully prepare for trial or meet the May 11, 1973, deadline for notifying the defendants of the experts he intended to call. The trial court informed counsel for the plaintiffs that it would treat any notice of deposition of an expert as notice that the expert would be called at trial. By order dated April 13, 1973, the trial court adjourned the deposition to April 23, 1973.

Additionally, on March 2, 1973, the plaintiffs' counsel noticed an adverse deposition to be taken of Dr. Norbert Enzer on March 15, 1973. Allegedly, Dr. Enzer, the chief pathologist at the hospital, had made a detailed report on the incident concluding that the hospital had no defense to the action. However, Dr. Enzer was in Europe for six weeks and was not deposed.

Counsel for the plaintiffs failed to submit the names of any experts it intended to call at trial or notice the deposition of any experts by the May 11, 1973, deadline, as set by the pretrial order. On June 19, 1973, Becker and Goldberg moved to prohibit the plaintiffs from calling any experts. Plaintiffs' counsel made a countermotion on the morning of the hearing to have the pretrial order vacated and to obtain a continuance of the trial date. He also requested that the defendants be required to produce the original hospital records pertaining to Cukrowski. At the hearing on June 25, 1973, the trial court denied the plaintiffs' motions with regard to the pretrial order and continuance. Plaintiffs' motion as to the hospital records was granted; the records were to be deposited with the court and available to the plaintiffs' expert document examiner, and a copy of the records was also ordered to be deposited with the court. The trial court also granted the defendants' motion concerning the expert witnesses. An order reflecting these decisions was entered on the day of the hearing, June 25, 1973.

On July 6, 1973, the plaintiffs filed an application for a writ of prohibition with this court seeking a stay in the commencement of the trial. The application was denied.

On July 10, 1973, the case was called for trial. Counsel for the plaintiffs renewed his motion to have the trial continued, which was denied. Counsel announced that he was not prepared to try the case, and upon motion by the defendants the complaint was dismissed for lack of prosecution. Judgment was entered the same day.

The plaintiffs, by an order to show cause dated September 11, 1973, moved the trial court to reopen the judgment. A hearing was set by the trial court for October 29, 1973, after the time when a notice of appeal from the judgment would have been required. This appeal was taken from the judgment and a motion was made by the plaintiffs to have the case remanded to the trial court

for the hearing on the motion to reopen. This court denied the motion to remand.

*Abuse of discretion—pretrial orders.*

The plaintiffs contend that the trial court abused its discretion in entering orders denying a number of their pretrial motions.

The plaintiffs raise this issue as it relates to the following orders:

1. Order dated November 3, 1972, denying a motion to strike the notice of trial and certificate of readiness filed by Becker and Goldberg on September 27, 1972.[1]

2. Pretrial order of January 16, 1973, which, among other things, set the case for trial on July 10, 1973.

3. The order adjourning the deposition of nurse Elizabeth Thompson, from March 6, 1973, to April 6, 1973.[2]

4. The order adjourning the deposition of witness Michael Elliot, the hospital administrator, from March 20, 1973, to April 23, 1973.

5. The order of June 25, 1973, granting defendants' motion to prohibit plaintiffs from calling expert witnesses at trial for failure to comply with the pretrial order of January 16, 1973, requiring exchange of names of witnesses by May 11, 1973.[3] The order also denied cross-motions of the plaintiffs to strike the notice of trial and pretrial order and grant a continuance of the trial date.

---

[1] Sec. 270.115, Stats., provides that a certificate of readiness may be filed 40 days after joinder of issues. In this case it was filed more than two years after Becker and Goldberg served their answers.

[2] No deposition was ever taken of witness Thompson.

[3] During prior proceedings, the trial court had advised plaintiffs they could include persons noticed for deposition in their list of witnesses and treatises required by the pretrial order. No list was ever exchanged or filed.

We commence our consideration of this issue by again stating that the alleged injuries occurred February 15 and 16, 1967. Plaintiffs retained counsel in August, 1969. The complaint was delivered to the sheriff for service on February 14, 1970, one day before the expiration of the statute of limitations. The record reflects that in 1971, a deposition was taken of plaintiff Cukrowski, to preserve his testimony. Also an attempt was made to depose defendant Oxman, a resident doctor at the time of the incident, who was no longer a resident of the state.

Except for the two instances noted above, the record is barren of any attempt on the part of the plaintiffs at discovery until after the pretrial order of January, 1973, which set the trial date as July 10, 1973. The only discovery attempted during this six-month period commenced in February, 1973, and was directed to nurse Thompson, hospital administrator Elliot, and Dr. Norbert Enzer, pathologist.

In *Latham v. Casey & King Corp.* (1964), 23 Wis. 2d 311, 314, 127 N. W. 2d 225, this court stated:

" . . . The general control of the judicial business before it is essential to the court if it is to function. 'Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort.' 14 Am. Jur., Courts, p. 371, sec. 171, Inherent Powers of Courts, 1963 Suppl., p. 77. . . ."

The principal thrust of the plaintiffs' argument on this abuse of discretion issue is that they did not have sufficient time to prepare their case and that the number of defendants created the difficulties they allegedly encountered in preparing. We find nothing in the record to support either of these contentions.

Our examination of the record leads us to but one conclusion. It is that an experienced trial judge commenced

in October, 1972, to bring a case on for trial which arose out of an incident alleged to have occurred in February, 1967. It was at the October, 1972, hearing on plaintiffs' motion to strike the certificate of readiness and notice of trial of defendants Becker and Goldberg that the trial judge advised plaintiffs that the case would be set for trial in June or July of 1973. Each of the orders challenged by the plaintiffs was the result of notice and after a full hearing before the courts. The orders were promptly entered and explicit as to detail. It is our further opinion that the record further demonstrates that in a number of instances the trial court considerably extended itself to accommodate the plaintiffs. An example relates to the plaintiffs' demand for the hospital records. A copy was made available to the plaintiffs at the examination of the hospital administrator Elliot in April, 1972, for approximately $200. The record indicates actual cost thereof was considerably more. It was not until the June 25, 1973, hearing that plaintiffs demanded production of the original records for inspection by their expert document examiner. The trial court ordered that the original records and a copy be immediately placed on file with the court and made available to the plaintiffs.

We can find no abuse of discretion arising out of the entry of any of the orders of the trial court. It is our opinion that the trial court exercised wise and discerning judicial discretion in each instance.

*Dismissal of complaint.*

The plaintiffs argue that the trial court abused its discretion in dismissing the complaint of the plaintiffs because of unreasonable neglect on the part of the plaintiffs to proceed in the cause.

This court has held that a trial court may dismiss an action for failure to prosecute under secs. 269.25 or

270.54, Stats., or under its inherent power to insure that an action pending before it is diligently prosecuted. *Zeis v. Fruehauf Corp.* (1972), 56 Wis. 2d 486, 202 N. W. 2d 225; *Lawrence v. MacIntyre* (1970), 48 Wis. 2d 550, 180 N. W. 2d 538; *Taylor v. State Highway Comm.* (1970), 45 Wis. 2d 490, 173 N. W. 2d 707; *Latham v. Casey & King Corp., supra.* Under any of the three, the question of dismissal is addressed to the sound discretion of the trial court which will not be upset on appeal unless a clear abuse of discretion is shown by a clear and justifiable excuse for the delay. *Zeis v. Fruehauf Corp., supra; Gawin v. Redevelopment Authority of Milwaukee* (1971), 52 Wis. 2d 380, 190 N. W. 2d 201; *Taylor v. State Highway Comm., supra.* This court, in *Lawrence v. MacIntyre, supra,* page 556, clearly stated its view of the matter:

"Courts are glutted with stale lawsuits, and the responsibility of an attorney to his client, as well as to the judicial system, requires that counsel be ready for trial in a reasonable time. One of the principal causes for delay in the trial courts is the failure of counsel to be in readiness when his case is called for trial or his lack of vigor in moving his case to the trial stage. . . .

". . . The responsibility of advancing a case on the calendar and preparing it for trial is upon the plaintiff's lawyer. It is not the responsibility of the judge. The judge's responsibility is to properly try cases that are ready for trial. He has the corollary and related responsibility of dismissing stale cases which clog judicial calendars."

In *Latham v. Casey & King Corp., supra,* pages 314, 315, this court stated:

". . . Perhaps the greatest area of the exercise of the power is the failure to diligently prosecute a case. In *Smith v. Carter* (1910), 141 Wis. 181, 184, 122 N. W. 1035, this court considered the dismissal of a complaint for lack of prosecution to be in the field of the court's broad discretion over the control of cases and stated, 'it is the duty of the trial courts, independently of statute

and under inherent powers, to discourage it [protraction of litigation] as much as possible and to refuse their aid to those who negligently or abusively fail to prosecute the actions which they commence.' "

From the commencement of the action to the date when the defendants demurred to the cause of action by Kathleen, a period of two years, seven months, there was no record action taken by the plaintiffs except a deposition to preserve the testimony of Cukrowski and an attempted deposition of Oxman. No discovery was noticed, attempted, requested, or conducted of the principal physicians-defendants, Becker, Hogan and Franklin, at any time either before serving the complaint or in the three-and-one-half years between commencement of the action and the date of trial. Of the three depositions noticed by the plaintiffs between February, 1973, and April, 1973, which followed the defendants' attempts to bring the case to trial by filing a notice of readiness for trial, and having a pretrial conference held and trial date set, the record reflects that only one of the depositions was actually held, that of the hospital administrator, Michael Elliot. On May 11, 1973, the date by which the plaintiffs were to notify the defendants of their intended expert witnesses and treatises, which under the trial court's order could be accomplished merely by giving notice of deposition up to and including the month of May, the plaintiffs gave no such notice. Having been denied a writ of prohibition by this court in early July, 1973, which sought to have the trial date postponed, the plaintiffs appeared on the date of trial, July 10, 1973, by their counsel and asserted that they were not prepared to proceed.

On appeal, plaintiffs endeavor to demonstrate to this court that there was justifiable excuse for their inability to prepare for trial. Their showing is by way of affidavit and not by way of evidence placed in the record. Defend-

ants contend that, as such, the assertions of the plaintiffs are clearly self-serving and should not be regarded as fact by this court.

The plaintiffs assert that the case was brought to the present counsel six months before the statute of limitations was to run having unsuccessfully attempted to retain numerous other lawyers; that present counsel took the case on a contingent fee basis; that numerous potential witnesses were contacted who refused to become involved in the case; that prior to August, 1972, many hours were spent doing preliminary research on the issues, contacting potential witnesses, discussing problems with the defendants' lawyers, consulting with another law firm which was handling a similar case, and consulting with the plaintiffs; that after August, 1972, counsel for the plaintiffs spent numerous hours drafting affidavits and legal papers in response to the motions of the defendants, attending court appearances, and attending depositions of the defendants in the similar case being handled by the other law firm; that after January, 1973, preparation for the case was virtually a daily affair; that overall plaintiffs' counsel spent 465 hours of recorded time on the case and estimates that that represented nearly 600 hours of actual time; that the time spent represented nearly one tenth to one eighth of all his hours of service to all of his clients; and that since the case was on a contingent fee basis, it would have been impossible for plaintiffs' counsel to have spent any more time preparing the case and still maintain his practice. The plaintiffs also repeat their assertion that in the last six months, between the pretrial order and the date of trial, the delay in preparation was primarily the fault of the defendants.

The record does not reflect that the trial court was ever informed of the exact amount of time spent in preparation of the case until those allegations were pre-

sented in an affidavit supporting the motion to reopen judgment in September, 1973. However, the trial court was generally informed of the circumstances as he read the affidavit presented to this court on the application for the writ of prohibition before he dismissed the action on July 10, 1973.

In *Wagner v. Springaire Corp.* (1971), 50 Wis. 2d 212, 217, 218, 184 N. W. 2d 88, this court defined "excusable neglect" as the neglect which might have been the act of a reasonably prudent person under the same circumstances, and held that the pressure of other work is not excusable neglect without additional persuasive explanation. In *Taylor v. State Highway Comm., supra,* page 495, this court rejected the claim that difficulties in retaining trial counsel or in getting counsel that was hired to act excused the party from a failure to prosecute where the record showed a lack of diligence on their part in urging the prosecution of the case.

This court has held that a trial court has the power to compel a plaintiff to proceed with trial or take a dismissal on the merits. *Russell v. Johnson* (1961), 14 Wis. 2d 406, 111 N. W. 2d 193; *Estate of Hatten* (1940), 233 Wis. 256, 289 N. W. 630. The obligation to bring his case to trial within a reasonable time lies with the plaintiff. *Taylor v. State Highway Comm., supra.* It is the legislative, judicial and public policy of long-standing that actions should not be permitted to slumber indefinitely and it is within the inherent power of a court to fashion sanctions and penalties best calculated to aid the court in its control of the judicial business before it. *Lawrence v. MacIntyre, supra; Taylor v. State Highway Comm., supra.*

The trial court did not abuse its discretion in entering judgment dismissing the complaint of the plaintiffs in the present case for unreasonable neglect on the part of the plaintiffs in its prosecution.

*Due process and equal protection.*

The plaintiffs assert that the failure of the trial court to vacate the pretrial order and continue the date of trial denied them equal protection of the laws and due process of law for two reasons: (1) They were prohibited from taking advantage of the recent decisions of this court in *Shier v. Freedman* (1973), 58 Wis. 2d 269, 206 N. W. 2d 166, 208 N. W. 2d 328; and *Trogun v. Fruchtman* (1973), 58 Wis. 2d 569, 207 N. W. 2d 297; and (2) they were not given sufficient time to raise the money to purchase the copies of Cukrowski's medical records.

The *Shier Case* was decided by this court on April 20, 1973, approximately three weeks prior to the date by which the plaintiffs were required to notify the defendants of the experts they intended to call at trial. In that case, this court abolished the "locality rule" thereby first permitting the use of medical experts outside the local community.

At the hearing on June 25, 1973, counsel for the plaintiffs argued to the trial court that the *Shier Case* now enabled him to obtain medical experts to testify whereas his attempts to obtain a medical expert in the Milwaukee area had been unsuccessful. At no time did counsel indicate that he had any specific witnesses in mind or that he was in contact with any such witnesses. The trial court responded, in effect, that without more specific information as to who the plaintiffs intended to call, and when the plaintiffs would be ready for trial, he would not extend the trial date or relieve the plaintiffs of the obligation to notify the defendants of the experts' names as provided in the pretrial order.

The action of the trial court did not prevent the plaintiffs from seeking witnesses outside the Milwaukee locality. The inability, if it existed, was not created by the ruling of the trial court, and, under the circum-

stances the plaintiffs were not denied due process or equal protection.

The *Trogun Case, supra*, was decided on May 21, 1973. That case involved the issue of informed consent. If anything, that case made the plaintiffs' task in this case easier. The plaintiffs assert, however, that since the defendants did not notice any expert which they intended to call, the *defendants* were denied the opportunity to defend against the plaintiffs' cause of action for informed consent by the pretrial order of the trial court. The plaintiffs do not have standing to complain that the defendants were thereby denied due process and equal protection.

With regard to the cost of obtaining copies of the 1600 pages of Cukrowski's medical records, the plaintiffs rely on *Mars v. Luff* (W. Va. 1972), 186 S. E. 2d 768. In that case, relying on *Boddie v. Connecticut* (1971), 401 U. S. 371, 91 Sup. Ct. 780, 28 L. Ed. 2d 113, as direct authority, the court held that an indigent couple, who applied for a divorce, were denied due process of law by the rejection of the application because of an inability to pay the court filing fees and costs.

The *Mars Case* and the *Boddie Case* have little to do with the claim that the plaintiffs here assert. The facts of the present case do not rise to the level of the asserted rule of law. The plaintiffs did not contend that they could not afford the $216 cost of the medical copies, but that additional time was necessary to secure the money. This falls short of showing the indigency as presented in the *Mars Case* or the *Boddie Case* and relates to an entirely different factual situation. This cost should have been anticipated by the plaintiffs and appropriate action taken. To say that more time was constitutionally required after the extended lapse of time since the cause of action occurred is completely unrealistic. The record also reflects that the trial court made the records available

to the plaintiffs at no cost immediately upon being requested to do so. On June 25, 1973, when the plaintiffs made demand for the original records it was ordered that the originals and a copy be deposited with the court until the conclusion of the trial and that they be made immediately available to the plaintiffs.

We are of the opinion that the plaintiffs have not been denied due process or the equal protection of the laws.

September 18, 1972, the trial court sustained the demurrer of Becker and Goldberg to the complaint of Kathleen Cukrowski, daughter of the plaintiffs, Walter J. and Helen G. Cukrowski. The daughter was a minor at the time of the injury and an adult at the time the action was commenced. The complaint of Kathleen alleged a cause of action for the loss of society, support and services of her father. On this appeal, the plaintiffs present issues relating to the order of the trial court sustaining the demurrer of Becker and Goldberg. However, since we affirm the judgment of the trial court dismissing the complaint of the plaintiffs as to all the defendants, we do not reach the issues raised in the demurrer proceeding.

The plaintiffs request this court to exercise its discretion pursuant to sec. 251.09, Stats., and reverse the judgment in this case, or in the alternative, remand the case to the trial court so that it can consider the motion to reopen the judgment, to prevent a miscarriage of justice. We have fully considered all of the arguments advanced by the plaintiffs and decline to order a new trial in the interest of justice.

This case was scheduled on the assignment of cases on the March, 1975, calendar of this court which commenced March 3, 1975. Under date of March 4, 1975, the plaintiffs requested permission to file a reply brief. The request is denied.

*By the Court.*—Judgment and orders affirmed.