Helmut PRAHL, Dynatron Research Foundation, Inc., and Dynatron Research Corporation, Plaintiffs-Appellants,†

v.

Bryan BROSAMLE, Forward Communications Corporation, Lieutenant Kuenning and County of Dane, Defendants-Respondents.

Court of Appeals

*No. 87–1384. Submitted on briefs November 12, 1987.— December 17, 1987.*

(Also reported 420 N.W.2d 372.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *John P. Koberstein,* of Madison.

For the defendants-respondents Bryan Brosamle and Forward Communications Corporation the cause

was submitted on the brief of *John M. Moore* and *Jean M. Wiencek* and *Bell, Metzner & Gierhart, S.C.,* of Madison.

For the defendants-respondents Lieutenant Kuenning and County of Dane the cause was submitted on the brief of *Lloyd J. Blaney* and *Dew, Blaney & Olson,* of Madison.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. Helmut Prahl, Dynatron Research Foundation, Inc., and Dynatron Research Corporation (collectively, Prahl) appeal from an order dismissing their complaint for failure to prosecute the action under sec. 805.03, Stats. The issues are: (1) whether secs. 808.08(1) and (2) and 808.09, Stats., preclude dismissal as a matter of law; and (2) if not, whether the trial court abused its discretion in so ordering. We answer both questions in the negative and affirm.

In May, 1976, Prahl sued television news reporter Bryan Brosamle and his employer, Forward Communications, together with Dane County and several of its law enforcement officers, for damages. The action arose out of Brosamle's coverage, with the county's permission, of the officers' response to a complaint of guns being fired on Prahl's property. Prahl's lawsuit was grounded upon allegations of trespass, violation of civil rights, false imprisonment and battery, among other things. The case was tried to a jury in December, 1977, and the trial court directed a verdict dismissing the action at the close of Prahl's case.

Prahl appealed and we upheld the dismissal of all causes of action except the trespass claim. We remanded for a new trial on that issue alone. *Prahl v. Brosamle,* 98 Wis. 2d 130, 295 N.W.2d 768 (Ct. App. 1980). Brosamle then moved for summary judgment

on grounds that there could be no trespass as a matter of law because it was common custom and practice for newspeople to follow police onto private property while covering newsworthy events. The trial court granted the motion and dismissed the action. Prahl appealed, and we again reversed, this time ruling that summary judgment was improper because Brosamle's affidavits failed to establish a prima facie defense. *Prahl v. Brosamle*, No. 82–1753, unpublished slip op. (Wis. Ct. App. Nov. 23, 1983). Brosamle then petitioned the supreme court for review. The petition was denied on March 5, 1984, and the case was remanded "for trial."

When more than three years passed with no activity in the case, the trial court, on April 3, 1987, notified counsel that it was, on its own motion, scheduling the case for dismissal "for unreasonable neglect to proceed with the cause pursuant to 805.03, Wis. Stats." The notice set a hearing date for the motion and directed any party wishing to oppose dismissal to file a memorandum and supporting affidavits prior to the hearing. Prahl's counsel telephoned the court to request a "scheduling conference," and the court clerk issued a "notice of court date" setting a new hearing date for "pretrial and motion to dismiss." Defendants Brosamle and Forward Communications filed their own motion to dismiss for failure to prosecute, together with a memorandum of law and an affidavit stating that there had been no activity in the case—no discovery, not even any communications or correspondence between counsel—over the past three years. Prahl's counsel responded on May 20, 1987, with a letter to the court stating that he had not taken any action in the case because of his belief that the case had been

awaiting scheduling by the court. He opposed Brosamle's motion to dismiss on grounds that: (1) secs. 808.08 and 808.09, Stats., place the burden for moving forward after remand on the trial court, not counsel; (2) that opposing counsel's statement in his affidavit that there had been no communications between counsel since 1984 was incorrect in that some oral "settlement discussions" had occurred; and (3) no one would be "hurt" if the case were ordered to trial. Prahl did not file an affidavit or other evidentiary materials.

At the hearing, the court heard arguments of counsel and took the matter under advisement.[1] On June 15, 1987, the court issued a memorandum decision concluding that the case was "stale" and should be dismissed pursuant to sec. 805.03, Stats., and *Neylan v. Vorwald,* 124 Wis. 2d 85, 368 N.W.2d 648 (1985).[2]

## I. IS DISMISSAL BARRED BY SECS. 808.08(1) AND (2) AND 808.09, STATS?

Prahl argues that after the supreme court denied the petition for review on March 5, 1984, he was not required to take any action to move the case toward trial because secs. 808.08(1) and (2) and 808.09, Stats., place that burden on the trial court. Section 808.08 provides that after an appeal is decided by the court of

---

[1] A transcript of the hearing does not appear in the record. The order for judgment, however, indicates that the court considered the briefs and arguments of counsel in reaching its decision.

[2] In *Neylan,* 124 Wis. 2d at 94, 368 N.W.2d at 653, the court discussed the "inherent power" of trial courts to dismiss actions "to control disposition of causes on its docket with economy of time and effort," quoting *Latham v. Casey & King Corp.,* 23 Wis. 2d 311, 314, 127 N.W.2d 225, 226 (1964).

appeals and the record is remitted to the trial court: "(1) [i]f the trial judge is ordered to take specific action, the judge shall do so as soon as possible"; and "(2) [i]f a new trial is ordered, the trial court, upon receipt of the remitted record, shall place the matter on the trial calendar." Section 808.09 provides as follows:

> Upon an appeal from a judgment or order an appellate court may reverse, affirm or modify the judgment or order as to any or all of the parties; may order a new trial; and, if the appeal is from a part of a judgment or order, may reverse, affirm or modify as to the part appealed from. In all cases an appellate court shall remit its judgment or decision to the court below and thereupon the court below shall proceed in accordance with the judgment or decision.

In our November 23, 1983, decision, we reversed the trial court's order for summary judgment, holding that because the defendants' affidavits did not establish a prima facie case for dismissal, the matter was inappropriate for pretrial summary disposition. As a result, our mandate read: "Judgment reversed. Matter remanded for trial." After the supreme court denied the petition for review without comment, the record was remitted to the trial court pursuant to an order stating "the judgment ... is reversed. Matter remanded for trial."

Neither our mandate nor the remittitur "order[ed] a new trial" within the meaning of sec. 808.09, Stats., for no trial had been held at that time. The case had been decided by the trial court on summary judgment, and we reversed because not all of the procedural requirements for summary judgment had been met.

Nor do we consider that the mandate or remittitur "ordered [the trial judge] to take specific action" within the meaning of sec. 808.08(1), Stats. The purpose of summary judgment procedure is to determine whether a dispute can be resolved without a trial. *Bulgrin v. Madison Gas & Electric Co.,* 125 Wis. 2d 405, 407, 373 N.W.2d 47, 49 (Ct. App. 1985). Our analysis of summary judgment cases involves a multistep process. We look first to the complaint to see whether a claim is stated and, if so, to the answer to see whether it joins the issue. If it does, we turn to the moving party's affidavits to ascertain whether they state a prima facie claim for relief, or, if the moving party is the defendant, a prima facie defense. If they do, we next examine the opposing affidavits to satisfy ourselves that no material facts or inferences are in dispute. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Only if all these questions are answered in the affirmative is summary judgment appropriate. If any "test" along the way is failed, summary judgment must be denied and the case sent back for further proceedings in the trial court.

That is what happened here. The summary judgment motion failed the third step in the analysis—the moving party's affidavits failed to establish a prima facie defense. As a result, the normal trial process could not be short-circuited by summary disposition and we remanded the case to the trial court with a mandate consistent with the rules governing summary judgments. That mandate did not order or direct that a trial date be set or that any particular action be taken by the trial court. To say that a remand "for trial" after reversal of a summary judgment unequivo-

665

cally mandates the court to schedule and hold a trial, or take other affirmative action, ignores both the legal and practical realities of summary judgment procedure. It is conceivable, for example, that, upon further discovery, the parties might discern other grounds for further summary judgment motions. They might agree to submit the cause on stipulated facts or to a referee for resolution of factual disputes, thus avoiding trial altogether. Under the circumstances of this case, the remand "for trial" is neither an order for new trial nor an order requiring the trial court to take "specific action" within the meaning of secs. 808.08(1) and (2), Stats.

Finally, we do not believe that sec. 808.09, Stats., which requires trial courts to "proceed in accordance with the [appellate court's] judgment or decision," compels a different result. We ruled that because the legal requirements were not met, summary disposition was inappropriate and the case should be put back into the trial process. The remittitur simply implemented that ruling.

## II. ABUSE OF DISCRETION

A motion to dismiss for want of prosecution is addressed to the sound discretion of the trial court, and we will affirm the court's action unless "it is clearly shown that there was an abuse of discretion." *Zeis v. Fruehauf Corp.*, 56 Wis. 2d 486, 489, 202 N.W.2d 225, 226 (1972). One seeking to set aside such a dismissal must show a "'clear and justifiable excuse' for the delay." *Trispel v. Haefer*, 89 Wis. 2d 725, 733, 279 N.W.2d 242, 245 (1979), quoting *Taylor v. State Highway Comm.*, 45 Wis. 2d 490, 494, 173 N.W.2d 707,

711 (1970). While this has been recognized as a "strict standard," it is said to be appropriate in light of the "'duty' of trial courts ... to 'refuse their aid to those who negligently or abusively fail to prosecute the actions which they commence.'" *Trispel* at 733, 279 N.W.2d at 245, quoting *Smith v. Carter,* 141 Wis. 181, 184, 122 N.W. 1035, 1036 (1910). Finally, we note that because dismissal is a harsh sanction, the remedy is appropriate "only in cases of egregious conduct by a claimant." *Trispel* at 732, 279 N.W.2d at 245, quoting Judicial Council Committee's Notes to sec. 805.03, Stats.

We will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Howard v. Duersten,* 81 Wis. 2d 301, 305, 260 N.W.2d 274, 276 (1977). The exercise of discretion is not the equivalent of unfettered decisionmaking, but to be sustained "must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). Generally, however, we will look for reasons to sustain a discretionary determination. *In Matter of Adoption of R.P.R.,* 98 Wis. 2d 613, 619, 297 N.W.2d 833, 836 (1980).

As indicated, Prahl did not file any affidavits in the trial court, nor has he provided us with a transcript of the proceedings at the hearing on the motions to dismiss. On the evidentiary record before us, then, it is undisputed that Prahl made no effort to move the case to trial between March 5, 1984, when the record was remitted to the trial court, and April 3,

667

1987, when the trial court noticed the case for dismissal on its own motion. While Prahl's counsel asserted in a subsequent letter to the court that some settlement discussions took place in that three-year period, the only evidentiary facts are those in the affidavits of respondents' counsel that there were not even any conversations between the attorneys during that time. As indicated, Prahl's only explanation for his failure to take any action in the case, or to even inquire about its status, from March, 1984, to April, 1987, is that he was relying on the court to move the case to trial.[3]

The trial court's memorandum decision granting the motion to dismiss noted that, despite having "ample notice and opportunity ... to effectuate further proceedings in this matter," Prahl had failed to meet his obligation to prosecute the action. The court referred to a lapse of more than three years during which Prahl had failed to take "any affirmative steps toward the continuation of [the] action," and concluded that the case was "stale" and thus subject to dismissal under sec. 805.03, Stats. In so deciding, the court engaged in a process of reasoning based on the facts of record and arrived at a conclusion. In other words, it exercised its discretion. *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971)

We are also satisfied that the court arrived at a reasonable result. First, Prahl's explanation for his

---

[3]Prahl asserts in his brief that the trial court had lost or misplaced the case file for an undetermined period of time between 1984 and 1987. Even if true, we fail to see how this fact—which admittedly was unknown to Prahl at the time—has any bearing on whether Prahl's failure to act was justifiable.

inaction—that he was waiting for the trial court to act—is not the type of "clear and justifiable excuse" that would warrant denial of the motion to dismiss. *Trispel,* 89 Wis. 2d at 733, 279 N.W.2d at 245. And where no justification for the delay is shown, it is an abuse of discretion *not* to dismiss. *Zeis,* 56 Wis. 2d at 489, 202 N.W.2d at 226. This is not a case like *Ford v. James,* 258 Wis. 602, 605, 46 N.W.2d 859, 860 (1951), where counsel requested the court to set a trial date or hold a pretrial conference. Prahl did absolutely nothing during the three-year period. Indeed, the facts are much more akin to those in *Cukrowski v. Mt. Sinai Hospital,* 67 Wis. 2d 487, 498, 227 N.W.2d 95, 101, *cert. denied,* 423 U.S. 914 (1975), where the plaintiffs did nothing to advance their action over a period of two years and seven months other than notice a deposition. The supreme court held that the trial court did not abuse its discretion in dismissing the action for failure to prosecute, stating:

> This court has held that a trial court has the power to compel a plaintiff to proceed with trial or take a dismissal on the merits. The obligation to bring his [or her] case to trial within a reasonable time lies with the plaintiff. It is the legislative, judicial and public policy of long-standing that actions should not be permitted to slumber indefinitely and it is within the inherent power of a court to fashion sanctions and penalties best calculated to aid the court in its control of the judicial business before it. *Id.* at 500, 227 N.W.2d at 102. [Citations omitted.]

A similar result obtained in *Lawrence v. MacIntyre,* 48 Wis. 2d 550, 180 N.W.2d 538 (1970), where the court upheld the dismissal of a case which had lain

dormant for several years without any action on the plaintiff's part.

> Courts are glutted with stale lawsuits, and the responsibility of an attorney to his client, as well as to the judicial system, requires that counsel be ready for trial in a reasonable time. One of the principal causes for delay in the trial courts is the failure of counsel to be in readiness when his [or her] case is called for trial or his [or her] lack of vigor in moving his [or her] case to the trial stage. We conclude that it is within the inherent power of the court to dismiss cases ... at any time it appears to the judge, in the exercise of his [or her] discretion, there has been undue delay or inexcusable neglect in advancing the case.

> A judicial policy of sua sponte dismissing neglected and delayed cases is necessary for the viability of the judicial system. The responsibility of advancing a case on the calendar and preparing it for trial is upon the plaintiff's lawyer. It is not the responsibility of the judge. The judge's responsibility is to properly try cases that are ready for trial. He [or she] has the corollary and related responsibility of dismissing stale cases which clog judicial calendars.

> We are satisfied that the dismissal in the present case was in the exercise of proper judicial discretion. It is the policy of this court to encourage the discretionary dismissal of stale lawsuits. *Id.* at 556, 180 N.W.2d at 541.

We agree, for delay is one of the basic impediments to the fair administration of justice. A plaintiff who has invoked the judicial process to advance a claim, especially in a trial court system stretched to its limits by those seeking its assistance, cannot sit back

for three years, waiting for someone else to take the initiative, and then be heard to argue that the case should not be dismissed for lack of prosecution. We believe this is especially so where, as here, the case had already been pending for nearly a decade when it was returned to the trial court in 1984. The dismissal remedy under sec. 805.03, Stats., is designed "to punish the suitor who sleeps away his [or her] day in court," *Hine v. Grant*, 119 Wis. 332, 336, 96 N.W. 796, 797 (1903), and we see nothing unreasonable about the trial court's order in this case. It was a proper exercise of discretion and a reasonable sanction for an egregious failure to prosecute the action.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). Dismissal as a sanction has been appropriately termed "Draconian." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). The Judicial Council Committee's Note, 67 Wis. 2d 691 (1974), to sec. 805.03, Stats., is as follows: "Because of the harshness of the sanction, a dismissal under this section should be considered appropriate only in cases of egregious conduct by a claimant."

Section 805.03, Stats., is patterned after Fed. R. Civ. Pro. 41(b).[1] Under Rule 41(b), dismissal with prejudice is appropriate when there is a clear record of delay or contumacious behavior such that the litigant can be charged with the behavior of the lawyer. *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962); *Washington v. Walker*, 734 F.2d 1237, 1238 (7th Cir. 1984).

---

[1] To the extent that decisions of the United States Court of Appeals show a pattern of construction they are persuasive authority in construing rules of Wisconsin Civil Procedure that are based on federal rules. *Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175, 179 n. 2, 311 N.W.2d 673, 675–76 (Ct. App. 1981).

There is in this case no clear record of delay or contumacious behavior on the part of the appellants' attorneys. Nor is there any hint of egregious conduct on the part of the claimants.

The appellant's counsel represents that he was waiting for the trial court to give the parties notice of a scheduling conference. Counsel points out that after the first remand from our court, the trial court scheduled a pretrial conference, without the request of either party. Counsel assumed that on our second remand the trial court would follow its past practice. Counsel may also have been lulled by our mandate which reversed and remanded this case for trial. I do not believe that counsel had the right to expect that the trial court was going to take the laboring ore in prosecuting his clients' case. *See Marshall-Wis. v. Juneau Square,* 139 Wis. 2d 112, 137, 406 N.W.2d 764, 774 (1987) (duty to move forward with prosecution of the action remains with the party who began the lawsuit). But I do not believe that his innocent mistake is "egregious" conduct which justifies dismissing his clients' action.

Section 805.03, Stats., may be used by a trial court engaged in judicial husbandry—clearing away the court's records of "mere deadwood." *Hine v. Grant,* 119 Wis. 332, 336, 96 N.W. 796, 797 (1903). This case is hardly mere deadwood. It was tried once which ended with the trial court granting the respondents' motion for a directed verdict. We held that was error. The trial court then granted the respondents' motion for summary judgment. We held that was error. The appellants may be fatigued by their futile efforts to have their case heard on its merits, but I do not agree with the majority's conclusion that they have slept away their day in court.