BARRY CARTAGE, INC., Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 12—May 7, 1957.*

54

For the appellant there were briefs by *Richard L. Harrington, Harrold J. McComas*, and *Fairchild, Foley & Sammond*, all of Milwaukee, and oral argument by *Mr. McComas*.

For the respondent Industrial Commission there was a brief and oral argument by *W. H. Putnam* of Madison.

For the respondent Henry J. Ball & Sons Company there was a brief and oral argument by *Theodore L. Priebe* of Milwaukee.

FAIRCHILD, J.   Barry is seeking a portion of the unemployment reserve account built up out of Ball's past contributions to the unemployment reserve fund. Barry claims that part of Ball's business was transferred to it and that it is Ball's successor to that extent. Under sec. 108.16 (8) (a), Stats., if the business of any employer is transferred in whole or in part, the transferee shall be deemed a successor for the purposes of ch. 108, Stats., and takes over all or the corresponding part of the transferor's unemployment reserve account. If Barry is not a successor, it must build up its own reserve account. It must contribute 2.7 per cent of its pay roll for each of three calendar years. After that its contribution rate may vary between 0 and 4 per cent depending upon the ratio between its reserve account and one year's pay roll. On the other hand, if Barry is a successor, its rate will immediately be dependent upon the balance in

the account transferred. Presumably, Barry will enjoy a substantial advantage by way of reduced contributions if it takes over the account. Conversely, Ball has an obvious interest in holding down its own contributions by retaining its entire account, particularly if it obtains new customers and increases its pay roll in order to serve them.

It is clear that what happened here was not a transfer of part of Ball's business in the ordinary sense of the term. Roundy's evidently negotiated with Barry and found Barry willing to make some arrangement more satisfactory than the one it had with Ball. Roundy's and Barry made a contract, and Roundy's notified Ball. Ball transferred nothing until two months later. Then it seemed to Barry that there was enough advantage in the breadth of Ball's license to justify an offer of $1,000, which Ball accepted.

The only question arises by virtue of a part of sec. 108.16 (8) (a), Stats., which provides:

". . . In case of the transfer of any of the assets of a covered employer's business by any means whatever, otherwise than in the ordinary course of trade, such transfer shall be deemed a transfer of business and shall constitute the transferee a successor hereunder, unless the commission, on it own motion or on application of an interested party, finds that all the following conditions exist:

"1. The transferee has not assumed any of the transferor's obligations; and

"2. The transferee has not acquired any of the transferor's good will; and

"3. The transferee has not continued or resumed the business of the transferor, either in the same establishment or elsewhere; and

"4. The transferee has not employed substantially the same employees as those the transferor had employed in connection with the assets transferred."

Under the quoted language, a transfer of any of the assets of a covered employer's business, otherwise than in the ordi-

nary course of trade, creates a presumption that there is a transfer of business. The presumption can be rebutted only by establishing all four of the negative propositions listed. They cannot all be established in this case. Hence the sole question is whether the license, standing alone, fulfils the phrase "any of the assets of the employer's business."

The appeal tribunal concluded that the license was a business asset and the assignment raised a presumption that was not rebutted. The commission concluded that the statute contemplated assets of significant value, necessary to the operation of a business and that the license did not qualify. The circuit court held that the commission could properly find that the license was not a business asset of the transferor, having no value to anyone except Barry.

It is clear that the assignment of the license was not essential to service of Roundy's by Barry. If Ball had not assigned it, Barry would have started to perform as agreed two months before and there could have been no thought that Barry was entitled to any part of Ball's unemployment reserve account. It is significant that Ball retained the equipment it used in its business. It parted only with the license which the transactions of others had rendered useless to it. If Ball should obtain new customers, the equipment would be a material consideration, but the license could not be.

In framing sec. 108.16 (8) (a), Stats., the legislature endeavored to set a reasonable standard by which to regulate successorship to unemployment reserve accounts. If a business continues, but ownership changes, there is sound reason for identifying the account with the business rather than the former owner. If a business be divided, the same is true as to its parts. Five elements were considered: Transfer of assets of the transferor's business; assumption of the transferor's obligations; acquisition of the transferor's good will; continuation of the transferor's business; employment of the

transferor's employees. Transfer of assets was given prime importance. There was to be successorship whenever there was transfer of assets plus any one or more of the other elements. The legislature recognized that there would be transfers of business where less than all the assets would be transferred, and that is doubtless the reason for saying "any of the assets." We do not think those words were intended to apply where the only asset transferred was a license which had previously lost all usefulness in the owner's business and where the owner retained assets of substantial value, material to the continuation of his business.

It has been suggested that it was conceivable that a situation might arise where the employees would be deprived of benefits if Barry were not recognized as Ball's successor and therefore that it would be good policy to recognize successorship. The answer is that the legislature made transfer of assets the essential condition, without which continuity of the force of employees is immaterial.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). It seems to the writer that the majority opinion has failed to discern the underlying objective of the legislature in permitting a partial or total transfer of unemployment reserve accounts from an original employer to a successor employer. Such reserve accounts are solely for the protection of the covered employees and not the employer. An employer can never withdraw funds from such reserve account and, even in event of the employer's bankruptcy, no part of such account is an asset to which resort may be had to pay claims or administration expenses.

The majority opinion stresses the fact of the respective future rates of contribution to their respective reserve accounts if Barry is held to be partial successor to Ball's reserve account. This factor explains why the corporations are willing to spend money to litigate the issue before us, but is

wholly immaterial to the underlying objective of permitting partial successorship of such a reserve account.

Sec. 108.16 (8) (c), Stats., provides in part as follows:

"The successor shall take over and continue the employer's account, including its plus or minus balance and all other aspects of its experience under this chapter, in proportion to the pay roll or employees assignable to the transferred business as determined for the purposes of this chapter by the commission."

This statutory provision clearly indicates that it is the proportion of employees taken over, as evidenced by their pay roll, and not the proportion of assets acquired, which determines the amount of the original employer's reserve account which is to be transferred to the successor employer's reserve account in the event the statutory test of successorship is met. This explains why the legislature was entirely unconcerned with the ratio of assets acquired by the successor employer. It, therefore, provided in sec. 108.16 (8) (a), Stats., that "the transfer of *any* of the assets of a covered employer's business by any means whatever" is sufficient to qualify the purchaser as a partial successor, provided such purchaser employs "substantially the same employees as those the transferor had employed in connection with the assets transferred."

The asset acquired by Barry was the public service commission franchise for which it paid Ball $1,000. No issue is raised but what the employment by Barry of 20 of the 25 employees who hauled Roundy's products pursuant to such franchise was an employment by Barry of "substantially the same employees as those the transferor had employed in connection with the assets [franchise] transferred."

The effect of the majority opinion is to qualify the plain and unambiguous words "transfer of *any* of the assets" in sec. 108.16 (8) (a), Stats., to read "transfer of any substantial useful assets." The policy reason assigned for such

statutory interpretation is apparently that, because Ball retained substantial assets which it continued to use in its business, it should not be deprived of the lower contribution rate that it was already enjoying and which would be the consequence of holding Barry to be a partial successor. However, if Ball had sold to Barry two or three of the trucks used in transporting Roundy's products, there could be no question but what a partial successorship resulted with a raising of Ball's contribution rate even though it retained substantial assets and continued in business. Therefore, the reason advanced in the majority opinion for its determination does not stand up under careful analysis.

The statute should be given its plain meaning without reading into it a qualification which does not exist and cannot be sustained from the standpoint of the public policy underlying the same. It is for this reason that the judgment below should be reversed, and the cause remanded to the commission with directions to find a partial successorship.

I am authorized to state that Mr. Justice WINGERT concurs in this dissenting opinion.