KARIBALIS-NELSON ENTERPRISES, INC., Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant.

Court of Appeals

*No. 88–1547. Submitted on briefs January 20, 1989.—Decided May 16, 1989.*

(Also reported in 442 N.W.2d 548.)

For defendant-appellant there were briefs by *Michael J. Mathis,* of Madison.

For plaintiff-respondent there was a brief by *James C. McLaughlin* and *Witkin, Weiby, Maki, Durst & Ledin,* of Superior.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   The Labor & Industry Review Commission appeals a judgment reversing its determination that the Department of Industry, Labor and Human Relations used the correct methodology when calculating Karibalis-Nelson Enterprises, Inc.'s (K–N), unemployment compensation reserve account. The issue is whether DILHR must maintain separate accounts for identifiable but legally indistinct segments of a single business entity. Because we conclude that the restaurant operation in question was merely a part of a corporate enterprise and not a separate "business" for purposes of maintaining a UC account, we reverse.[1]

---

[1] We do not address LIRC's argument that the original DILHR decision was res judicata in view of our reinstatement of its ruling.

Hayward's Civic Club (HCC), as part of a larger sports complex, operated a restaurant known as the Tee Room. Pursuant to ch. 108, Stats., HCC maintained a single UC reserve account. Because the overall business was largely seasonal in nature, its UC account acquired a deficit attributable to benefits paid to laid off employees. Meanwhile, K–N, a Wisconsin corporation, leased the Tee Room from HCC in 1978. K–N operated a successful year-round restaurant business in Hayward and had a positive UC account. K–N acquired $14,000 of HCC's negative account balance upon leasing the restaurant. DILHR, in computing the negative balance, transferred only that percentage of HCC's account as the Tee Room payroll proportionately bore to the total HCC payroll. Using that basis, HCC's wage records indicated that approximately 50% of its business for UC purposes was transferred to K–N. DILHR did not separate the Tee Room business from the balance of K–N's corporate business for UC accounting purposes.

Seven months later, K–N returned the Tee Room business to HCC, and DILHR, applying the same formula, found that the Tee Room was approximately 21% of K–N's business and transferred a similar portion of the K–N UC account to HCC. As a result of DILHR's action, K–N was unable to return a large portion of the negative UC account to HCC.

Under ch. 108, Wisconsin's UC law, every covered employer must report its employee wages and pay quarterly state UC taxes. Sec. 108.18(1), Stats.; Wis. Admin. Code, sec. ILHR 110.03 (1987). Each covered employer is then assigned its own separate employer account in the state UC system. Sec. 108.16(2)(a), Stats. Taxes paid by the employer are credited to its UC reserve account, while UC benefits paid to its terminated or laid-off employees are charged against the employer's account.

Sec. 108.16(2)(b), Stats. The employer's UC taxes minus the benefits paid to its employees yields the employer's reserve account balance. Sec. 108.02(14), Stats.

The question is whether two UC reserve accounts are necessary when a single corporate enterprise partially acquires the operations of another. K–N maintains that the negative balance attributable to the Tee Room was not properly merged with K–N's account. When HCC regained the Tee Room in 1979, K–N asserts it should have been allowed to return to HCC most of the negative balance K–N obtained when it initially leased the Tee Room.[2] K–N appealed LIRC's determination to the Sawyer County Circuit Court, which ruled that LIRC's application of ch. 108 was not consistent with the legislative intent.

To decide whether DILHR misapplied the unemployment reserve account methodology requires statutory interpretation, which we determine without deference to the circuit court. *Neiss v. Board of Educ.,* 128 Wis. 2d 309, 313, 381 N.W.2d 614, 616 (Ct. App. 1985). Although we will give weight to a statute's interpretation by its enforcing administrative agency, we are not bound by that construction. *Leissring v. DILHR,* 115 Wis. 2d 475, 481, 340 N.W.2d 533, 536 (1983). The agency's construction should be upheld when it is consistent with a statute's unambiguous language because that language is the best indication of legislative intent. *See Marshall-Wisconsin Co. v. Juneau Square Corp.,* 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987).

---

[2] K–N concedes that even under its methodology, any tax payments attributable to its Tee Room business between June 15, 1978, and May 1, 1979, would be subtracted from the original $14,009.20 negative account balance it incurred when the Tee Room was transferred to it.

Several portions of the 1977 version of this state's UC law are in dispute. Section 108.16(8)(a), Stats. (1977), defined a business "transfer" for unemployment reserve account purposes: "If the business of any 'employer' is transferred in whole or in part, the transferee shall be deemed a successor . . .."

Section 108.16(8)(c), Stats. (1977), provided for the partial transfer of unemployment reserve accounts when one business was partially transferred to another:

> The transferee shall take over and continue the transferor's account, including its plus or minus balance and all other aspects of its experience under this chapter, in proportion to the payroll or employes assignable to the transferred business as determined for the purposes of this chapter by the department.

Finally, sec. 108.16(8)(f), Stats. (1977), provided for a recomputation of an employer's contribution rate and reserve account when it partially merged with another business:

> The contribution rates applicable with respect to the accounts of the transferee and the transferor shall be respectively determined or redetermined as of the applicable computation date . . . as follows: For the purpose of s. 108.18, the department shall determine the "experience under this chapter" of the transferee's account and of the transferor's account by allocating to the transferee's account for each period in question the respective proportions of the transferor's payroll and benefits which the department determines to be properly assignable to the business transferred.

K–N maintains that sec. 108.18 was ambiguous as to how DILHR should calculate an employer's unem-

ployment reserve account upon the acquisition of a portion of another business. K–N urges this court to construe sec. 108.18 to require separate accounts when such a transaction occurs; one for the existing business and one for the purchased one. We conclude that sec. 108.18 clearly stated that when one business was partially transferred to another, the two unemployment reserve accounts were to be merged based on a pro rata formulation.

When construing a statute, we first look to the language of the statute itself. *Marshall-Wisconsin,* 139 Wis. 2d at 133, 406 N.W.2d at 773. If the language is plain and does not lead to absurd or unreasonable results, we end our inquiry and effectuate the legislature's intent. *See State v. Britzke,* 100 Wis. 2d 675, 680–81, 324 N.W.2d 289, 291 (Ct. App. 1982).

The methodology set forth in sec. 108.18 is straightforward. If the business of any employer is transferred in whole or in part, the transferee shall be deemed a successor for the purposes of ch. 108 and take over all, or the corresponding part of the transferor's unemployment reserve account. The successor employer acquires that part of the purchased company's unemployment reserve account as that account bears to the percentage of the business acquired. Here it is not disputed that the Tee Room constituted approximately 50% of HCC's total business. Accordingly, DILHR properly transferred to K–N's unemployment reserve account 50% of HCC's negative account balance, or $14,009.20. Contrary to K–N's contention, DILHR then implemented the exact methodology, albeit to a different base when HCC reacquired the Tee Room. DILHR determined that the Tee Room constituted approximately 21% of K–N's total

business and transferred an identical proportion from K-N's negative account balance, or $1,304.98.

K-N correctly notes that in the two transactions, the bases to which the rates were applied were different. But this application is in accordance with the statutory scheme that mandates pro rata allocation of a transferor's account balance. Sec. 108.16(8)(f), Stats. (1977). That statute did not suggest that DILHR is to maintain separate unemployment reserve accounts for each component of an employer's corporate business.

"In framing sec. 108.16(8)(a), Stats., the legislature endeavored to set a reasonable standard by which to regulate successorship to unemployment reserve accounts." *Barry Cartage, Inc. v. Industrial Comm'n,* 1 Wis. 2d 52, 58, 83 N.W.2d 135, 138 (1957). Absent constitutional infirmities, the equity of a specific tax scheme is a concern for the legislature and not this court. *See City of West Allis v. Milwaukee County,* 39 Wis. 2d 356, 369, 159 N.W.2d 36, 42 (1968). We therefore reverse the circuit court and reinstate LIRC's decision and order.

*By the Court.*—Judgment reversed.